[No. 25580.   Department One.   August 21, 1935.]

THE STATE OF WASHINGTON, *Respondent,* v. CARL PATTERSON, *Appellant.*[1]

[1]Reported in 48 P. (2d) 193.

240

*J. P. Tonkoff*, for appellant.

*Robert J. Willis* and *Lloyd L. Wiehl*, for respondent.

GERAGHTY, J.—The appellant was convicted of the crime of murder in the first degree, the jury by a special verdict imposing the death penalty. From judgment and sentence upon the verdict, this appeal is taken.

We have before us a short record, the statement of facts containing only the answers made by three jurors upon their *voir dire*. The denial of appellant's challenge for cause to these three jurors is the only substantial error assigned by the appellant.

On his examination, juror E. R. Hall answered as follows:

"Q. (By Mr. Delle) Did you form an opinion at that time as to the guilt or innocence of this defendant? A. To a certain extent, yes. Q. Is that opinion of such a nature that you can't dispose of it, get it out of your mind before you start on this case? A. No. Q. Do you think you can get all the facts, alleged facts, and base it entirely on the evidence as adduced from the stand here. A. Yes. . . . Q. Do you know of any reason at this time why you cannot sit as a fair and impartial juror in this case and render a verdict based on the evidence and the instructions of the court? A. No. . . . Q. (By Mr. Tonkoff) I believe you said then you are of an opinion right now, are you not, a certain opinion as to the guilt or innocence of this defendant? A. Well, to a certain extent, yes. . . . Q. You formed your opinion from what you have heard, have you not? A. Yes. Q. And it will take evidence to remove that opinion, will it not? A. Yes, sir. THE COURT: You say you have formed that opinion from what you have heard? A. Yes. Q. (By The Court) Have you any opinion now as to the truth or falsity of what you heard? A. No. Q. You took what you heard to be the fact? A. Yes. Q. But you have no opinion outside of the fact that you heard it that it is a fact. A. Not at all. Q. If

the evidence showed that what you had heard was not correct, then you would have no longer an opinion based on what you had heard? A. Right. . . . Q. (By Mr. Tonkoff) You are of such an opinion right now that it would take evidence to remove that opinion? Somebody, either the prosecution or the defense, would have to introduce evidence on this stand to change your opinion, wouldn't they? A. Surely. . . . THE COURT: Do you think you could decide the case on the evidence that the state introduces here? A. Absolutely. Q. If the evidence that the state introduces is different from what you think the facts now are, do you think you can accept that evidence rather than what you now think the facts are? A. I think everybody has an opinion if they have read anything about the case. . . . Q. (By Mr. Tonkoff) And if he [defendant] chose not to take the stand, would you be prejudiced against him? A. No. Q. You wouldn't consider that in coming to your verdict, would you, or would you not? The fact that he doesn't take the stand, assuming he doesn't take the stand, would that have any bearing on you whether he is guilty or innocent? A. Yes. Q. It would have a bearing on you against him, your inclination would be against him, wouldn't it? A. Sure. . . . THE COURT: If the Court should instruct you that the defendant has a right to take the stand, or not to take the stand, and that the jury must draw no inference against him by reason of the fact that he does not take the stand, could you then follow that instruction and not draw such an inference? A. Yes. . . . Q. (By Mr. Tonkoff) After all the evidence is submitted and you have a reasonable doubt in your mind as to the guilt or innocence of this defendant, what would be your verdict? A. Acquittal. . . . Q. And after you form your opinion on the evidence introduced and you are convinced, in the exercise of your faculties, that this defendant is or is not guilty, and eleven other men on that jury are of the adverse opinion to you, would you allow them to sway you over to their belief? A. No. Q. Do you believe you could exclude all prior discussions and propaganda? A. Yes. Q. Without the defendant taking the stand? A. Yes."

The juror J. A. Amundson answered as follows:

"Q. (By Mr. Delle) Did you form any opinion at that time as to the guilt or innocence of the defendant? A. An opinion as I would reading an article. Q. Just gained from the alleged facts as given by the paper? A. Yes. Q. Is that such an opinion that you couldn't lay it aside and base your verdict on the evidence? A. No. . . . Q. (By Mr. Tonkoff) You say you have an opinion as to the guilt or innocence of the defendant? A. Yes, newspaper opinion. Q. It would require some evidence to remove that opinion, wouldn't it? A. Yes. Q. Assuming we didn't show any evidence on either side, what would your verdict be? In other words, you would be inclined—if you were sent out to the jury room right now, what would your verdict be? A. I am afraid it would be guilty. Q. And the fact that Sheets was tried and convicted would also confirm your opinion as to the guilt of this defendant? A. Only as he was connected up with it. . . . THE COURT: The defendant in all cases is presumed to be innocent until proven guilty. Right now that presumption prevails in favor of the defendant and if no evidence was introduced you would be instructed to return a verdict of not guilty, and you wouldn't hesitate to do that? A. If the court so instructed. . . . Q. (By Mr. Tonkoff) Your opinion right now is that the defendant is guilty, isn't it? A. Just the same as it was a while ago. Q. And he would have to introduce some evidence to prove his innocence, wouldn't he? A. Yes. Q. If the court instructed you to, could you get rid of that opinion before we proceed with the case? A. It would take some evidence to change my opinion. . . . THE COURT: Right now, without any evidence you would have no hesitancy in returning a verdict of not guilty if so instructed? A. If the court so instructed. . . . Q. (By the Court) I suppose your opinion is based on what you read in the newspaper? A. Yes. Q. But you have no opinion as to whether the newspaper was a true recital of the facts? A. I don't know whether it was false or true. Q. And you

would decide this case solely on the evidence? A. Yes, regardless of what my opinion might be. . . ."

The juror Paul E. Kirker answered as follows:

"Q. (By Mr. Sandvig) Have you any opinion as to the facts in this case? A. I have an opinion. Q. Is that impression or condition of mind such that you could lay it aside and decide this case solely on the evidence? A. Yes, sir. Q. (By Mr. Tonkoff) You say you have an opinion right now regarding the guilt of this defendant? A. Yes. Q. And it would take evidence to remove that, wouldn't it? A. Either remove it or strengthen it. Q. But we would have to introduce evidence to remove your opinion right now as to the guilt or innocence of the defendant? A. There would have to be evidence to make me change it. Q. And there would have to be a substantial amount of evidence, wouldn't there? A. Yes. . . . THE COURT: That is based on what you assume the facts to be as stated in the paper? A. Yes. Q. But you have no opinion as to the truth or falsity of the facts as stated in the newspaper? A. No. Q. And you would decide and come to your decision only on the evidence in this case? A. Yes. . . . Q. (By Mr. Tonkoff) Both sides introduce evidence on the stand then you are going to consider this evidence they introduce together with the opinion you now have? A. Well, if there was no evidence introduced I would still have the same opinion. Q. It would take a substantial amount of evidence to change that opinion? A. I don't know what a substantial amount would be, but it would take evidence I could believe in. Q. It would take quite a bit of evidence to remove your belief. We would have to put on evidence on the stand to change your opinion, then from there on you could go on as an impartial juror? A. No, I don't think quite that. Q. Do you believe you can remove this opinion you have and sit there impartially at the beginning of this case when the evidence is introduced? A. Yes. . . ."

The court denied the challenge to these three jurors, after which the appellant used the two peremptory

challenges remaining to him in striking from the panel the jurors Hall and Amundson. The juror Kirker remained upon the panel.

If the court erred in denying appellant's challenges to the jurors Hall and Amundson, under the circumstances the error would not be cured by their subsequent discharge from the panel through the use of peremptory challenges. We have held that a refusal to sustain challenges for proper cause, necessitating the use of his peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been, as in this case, compelled subsequently to exhaust all his peremptory challenges before the completion of the jury. *State v. Rutten*, 13 Wash. 203, 43 Pac. 30; *State v. Stentz*, 30 Wash. 134, 70 Pac. 241, 59 L. R. A. 802.

Rem. Rev. Stat., § 331 [P. C. § 8496], provides:

"A challenge for actual bias may be taken for the cause mentioned in the second subdivision of section three hundred and twenty-nine. But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

While we have held that the discretion lodged in the trial court by this section is subject to review by the appellate court, under the constitutional guaranty to the accused of an impartial jury *(State v. Rutten, supra; State v. Stentz, supra)*, upon review the determination of the trial court is entitled to the same presumptions accorded to its determination upon other issues of fact triable by it. In *Reynolds v. United States*, 98 U. S. 145, Chief Justice Waite, speaking for the court, said:

"In considering such questions in a reviewing court, we ought not to be unmindful of the fact we have so often observed in our experience, that jurors not unfrequently seek to excuse themselves on the ground of having formed an opinion, when, on examination, it turns out that no real disqualification exists. In such cases the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case. The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside, and it will not be error in the court to refuse to do so."

While the full record is not before us, enough appears to indicate that the crime of which appellant was convicted and the circumstances surrounding its commission were such as to challenge general attention in the section of the state in which it was committed. It is reasonable to suppose that it was difficult to select a panel of twelve men and women who had not heard or read about the case and formed some opinion or received some impression concerning the event. Under present-day conditions, to select a jury with minds free from some such tentative opinion or impression would be possible only by drawing the panel from hermits or illiterates, and even these would not be isolated from information conveyed by the radio.

In a day when it was much easier than at present to select jurors free from newspaper opinion, Chief Justice Agnew of Pennsylvania, in *O'Mara v. Commonwealth,* 75 Pa. St. 424, 428, said:

"We must either recede, and go back to the practice of an age when ignorance of passing events consti-

tuted a characteristic of the times, and exclude every juror who has formed any opinion, even the slightest; or we must stand abreast with the present age, when every remarkable event of today is known all over the country to-morrow, and exclude those only whose opinions are so fixed as to be prejudgments, or have been formed on the known evidence in the cause. It is needless to say the world moves and carries us with it, and if we lag behind we must commit the trial of the most important causes in life to those, so ignorant, their dark minds have never been smitten by the rays of intelligence.''

The courts have attempted to define the distinction between an opinion and an impression, and again, a distinction is made between casual opinions and those that are fixed. But however well defined those distinctions may appear to learned courts, it will not do to assume that jurors under the stress of examination always use the terms with more than approximate accuracy. The state of the juror's mind must be determined by a fair consideration of his answers and attitude as a whole. The proper test is whether the juror can, notwithstanding an opinion, render a fair and impartial verdict according to the evidence. With reference to a statute much like our own, the supreme court of Iowa, in *State v. Field,* 89 Iowa 34, 56 N. W. 276, said:

''It must of necessity be, in any case where an opinion is formed, that some evidence would be required to remove it. The statute evidently contemplates the existence of such an opinion as will not prevent a juror from rendering a true verdict, for it requires the court to find whether or not the opinion formed, if any, will prevent such a verdict.''

And in *State v. Gile,* 8 Wash. 12, 35 Pac. 417, it is said:

''It is not every opinion, formed or expressed, that will disqualify a juror, but only such as prevent the giving of a fair trial and impartial verdict.''

In *State v. Croney,* 31 Wash. 122, 71 Pac. 783, we said:

"The juror Ogden testified that he had read an account of the killing in a newspaper; that he formed an opinion from such reading; and that it would take evidence to remove that opinion; and, when asked the direct question if it would take evidence to remove such opinion, replied that it would. But to the next question, 'Then you could not go into this jury box, sworn as a juror, with your mind perfectly free, neither in favor of one side or the other, if you were chosen as a juror?' the answer was: 'Yes, sir; I think I could.' Q. 'You could go into the jury box with your mind perfectly free from bias?' A. 'Yes, sir.' Q. 'Then the opinion you have would not in any manner influence you in arriving at a just verdict in this case?' A. 'I don't think it would.' The whole testimony of the juror shows that he did not intend to state that he had any fixed opinion in regard to what he had read of the matter, but that it was simply an impression from such reading without any knowledge of whether what he had read was the fact or not. The amount of credit given to newspaper accounts differs very largely with the individuals who read them, and yet it can scarcely be denied that some impression is made on the mind of every reader who gives time enough to an article to read it at all. But such an impression as this is not such an opinion as would disqualify a juror from passing upon the guilt or innocence of a defendant based upon the testimony adduced at the trial, under proper instructions by the court."

In *Reynolds v. United States,* above quoted, the chief justice said:

"The courts are not agreed as to the knowledge upon which the opinion must rest in order to render the juror incompetent, or whether the opinion must be accompanied by malice or ill-will; but all unite in holding that it must be founded on some evidence, and be more than a mere impression. Some say it must be positive (Gabbet, Criminal Law, 391); others, that it must be decided and substantial (*Armistead's Case,*

11 Leigh (Va.), 659; *Wormley's Case,* 10 Gratt. (Va.) 658; *Neely v. The People,* 13 Ill. 685)); others, fixed (*State v. Benton,* 2 Dev. & B. (N. C.) L. 196); and, still others, deliberate and settled (*Staup v. Commonwealth,* 74 Pa. St. 458; *Curley v. Commonwealth,* 84 id. 151). All concede, however, that, if hypothetical only, the partiality is not so manifest as to necessarily set the juror aside. Mr. Chief Justice Marshall, in *Burr's Trial* (1 Burr's Trial, 416), states the rule to be that 'light impressions, which may fairly be presumed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of the testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him.' The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect. In these days of newspaper enterprise and universal education, every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits.''

In the case before us, a fair reading of the testimony of the challenged jurors as a whole convinces us that they were free of such bias or fixed opinions as would disqualify them from according the accused the fair and impartial trial guaranteed by the constitution and laws. The opinions they admitted entertaining were tentative, grew out of newspaper accounts they had read, and were of such character as would not disable them from duly weighing the evidence if it varied from the newspaper accounts. Whether opinions or impressions, they were such as would naturally be entertained by anyone reading the news-

papers. As the juror Hall expressed it, "I think everybody has an opinion if they have read anything about the case." The juror Hall, upon being asked by the attorney for appellant if, after all the evidence was submitted, he had a reasonable doubt in his mind as to the guilt or innocence of the defendant what his verdict would be, answered, "Acquittal."

"Q. You would form your opinion from just the evidence introduced here before you, wouldn't you? A. Yes. Q. And after you form your opinion on the evidence introduced and you are convinced, in the exercise of your faculties, that this defendant is or is not guilty, and eleven other men on that jury are of the adverse opinion to you, would you allow them to sway you over to their belief? A. No. Q. Do you believe you could exclude all prior discussions and propaganda? A. Yes. Q. Without the defendant taking the stand? A. Yes."

Questioned by the court, the juror Amundson answered:

"Q. Right now, without any evidence you would have no hesitancy in returning a verdict of not guilty if so instructed? A. If the court so instructed. Q. I suppose your opinion is based on what you read in the newspaper? A. Yes. Q. But you have no opinion as to whether the newspaper was a true recital of the facts? A. I don't know whether it was false or true. Q. And you would decide this case solely on the evidence? A. Yes, regardless of what my opinion might be."

The juror Kirker, after admitting that he had an opinion which it would take evidence to change, in answer to a question by the court, said that his opinion was based on what he assumed the facts to be as stated in the newspapers.

"Q. (By the Court) But you have no opinion as to the truth or falsity of the facts as stated in the news-

paper? A. No. Q. And you would decide and come to your decision only on the evidence in this case? A. Yes."

We are of the opinion that the trial court did not abuse its discretion in denying the challenges to the named jurors.

Appellant contends the court erred in denying his motion for a new trial based upon newly discovered evidence. At the time the motion was heard and disposed of, June 30, 1934, the only supporting evidence was the affidavit of appellant's attorney, to the effect that J. D. McArthur, one of the jurors who sat in the case, had told affiant that he, McArthur, was not a taxpayer in Yakima county or in the state; that McArthur himself refused to make an affidavit to that effect, but admitted to affiant that he was not a taxpayer.

Another affidavit, found in the transcript but not in the statement of facts, made by juror Floyd Collier, stated that he was not a tax payer within the state. Collier's affidavit was made October 23, 1934, and, of course, was not before the court when it ruled on the motion, and cannot be considered upon review here.

As to the qualification of juror McArthur, the court had before it nothing except the hearsay affidavit of appellant's attorney. The juror had qualified himself on his *voir dire*. As to such unsworn statements of jurors, brought before the court upon the affidavit of third persons, we said in *Maryland Casualty Co. v. Seattle Electric Co.*, 75 Wash. 430, 134 Pac. 1097:

"Whatever the breadth of the application of the rule as to the inadmissibility of the affidavits of jurors to establish their misconduct, it is almost universally held that affidavits of third persons as to unsworn statements of jurors tending to show either the fact of misconduct or its effect upon the verdict cannot be re-

ceived for any purpose because they are of a purely hearsay character.''

In *Eyak River Packing Co. v. Huglen,* 143 Wash. 229, 240, 255 Pac. 123; 257 Pac. 638; we said:

''A verdict returned by the jury and accepted by the court is final and conclusive in so far as the jury are concerned. They will not either as a body or as individuals be heard to stultify it. Public policy and common decency alike forbid it.''

▮ The particular disqualification alleged in the affidavit as to the juror McArthur, even if true, was not one affecting his capacity to do his duty intelligently and impartially in the case, and the challenge to his qualification could not be urged after verdict. The rule upon this question is stated in *Williams v. United States,* 3 F. (2d) 933, where the circuit court of appeals said:

''It appears that the juror in question was summoned from bystanders as a talesman, as provided by law; that he qualified and was accepted. The District Judge states that the juror was asked upon his voir dire if he was a householder or a freeholder in the Middle district of Tennessee, to which he replied that he was. The affidavit of the juror states that he owned no lands in Tennessee; that his wife was dead and all his children nonresidents of Tennessee; that the juror lived at a certain street number in the home of another person, from whom he rented, and to whom he made weekly payments for his room. We are cited to no authority that, according to the juror's statement, he was not a householder. But, assuming that he was not such, we think the verdict was not thereby vitiated. It is, we think, the general rule that such disqualification is only ground of challenge propter defectum, which is waived by failure to exercise the challenge either voluntarily or through negligence, or through want of knowledge of the disqualification. *Kohl v. Lehlback,* 160 U. S. 293, 302, 16 S. Ct. 304, 40 L. Ed. 432; *Brewer v. Jacobs* (C. C.) 22 F. 217, 231

et seq., cited in *Kohl v. Lehlback, supra,* page 301 (16 S. Ct. 304); *Hamilton v. State,* 101 Tenn. 417, 418 et seq., 47 S. W. 695; *Givens v. State,* 103 Tenn. 648, 666, 55 S. W. 1107.''

Finding no error in the record, the judgment must be affirmed.

MAIN, TOLMAN, BEALS, and BLAKE, JJ., concur.