[No. 26096. Department One. May 4, 1936.]

CAROLINE ALEXSON *et al., Respondent,* v. PIERCE COUNTY, *Appellant.*[1]

*Harry H. Johnston* and *John E. Belcher,* for appellants.

*E. N. Eisenhower* and *John E. Gallagher,* for respondents.

GERAGHTY, J.—This appeal is from an order granting a new trial after verdict in favor of the defendants, in five actions involving similar issues and consolidated for trial.

The actions were brought by the plaintiffs to recover from the defendant, Pierce county, damages alleged to have accrued to their properties by a slide of earth, consequent upon the improvement by the county of one of its public roads.

The complaint alleged that the defendant carelessly and negligently built and paved a public highway on a hillside directly above the property of the plaintiffs;

[1]Reported in 57 P. (2d) 318.

that the improvement was so made that it diverted the rain and other waters from their natural courses to a concentrated point, and then carelessly and negligently cast it onto the hillside immediately above the plaintiffs' properties, causing earth to slide down upon them.

At the conclusion of the cases, tried to a jury, verdicts were returned in favor of the defendant. The plaintiffs interposed motions for new trial on the statutory grounds, but the only one urged was misconduct of the jury, particularly of the juror, Mary Brackett. Affidavits were submitted in support of, and in opposition to, the motions for new trial.

In an affidavit supporting the motion, the attorney for the plaintiffs stated that, after the jury had returned its verdict, he met Mary Brackett and talked with her about the case; that then she informed him that, when she was being questioned as to her qualifications, she honestly believed she did not know anything about the case, but after she saw the property [The jury viewed the premises] and heard some of the testimony, she realized she was well acquainted with the conditions existing prior to the slide; that she was personally acquainted with a lot, a part of which was involved in the actions; that she had known this lot for a number of years, having made many visits to the district, and knew the parties who had purchased a part of the lot, and what was paid for it; that, in the many times she had visited at the home on the lot, she had seen cracks in the cement floor of the house, which she was convinced had been caused by the earth under the floor slipping and sliding; that Mr. Storlie, the occupant of the house, had trouble with dirt sliding down on his property, and she was firmly convinced that all the property involved in the several suits was subject to slides; and that she had this conviction prior to the

time she was called as a juror. It was averred in the affidavit that, by reason of the juror's prior knowledge of the facts, the plaintiffs were faced with a burden *of which they had no knowledge in advance,* and which was greater than the law required them to assume.

When, on their *voir dire,* prospective jurors were questioned as to their qualifications to sit, the court explained to them the nature of the suit and the issues involved, and asked specifically if any of them was acquainted with the property, Mrs. Brackett, with others, answering in the negative.

The importance of Mrs. Brackett's knowledge of the conditions respecting the premises involved lay in the fact that it implied that the condition complained of existed prior to the county's improvement of the highway.

Another juror, Cecile A. Healy, made affidavit that, while the jury were considering their verdict, Mrs. Brackett stated to them that she was acquainted with the property involved and had visited there for many years; that she had been offered the use of the Storlie house, standing upon part of one of the lots alleged to be damaged, for the summer vacation, but had refused to accept because she was afraid of the property; that she had seen cracks of four to five inches in width in the cement floor of the Storlie house and was convinced that they were caused by the ground sliding; that, one time when she had the key to the Storlie house, a small slide occurred, and the Storlies had to get the key from her in order to get into the house to take care of the dirt; that she stated that she was thoroughly convinced, before she heard any evidence in the case, that the whole area upon which the houses of plaintiffs were built was resting upon dangerous slide ground.

Another juror made affidavit to substantially the same statements before the jury by Mrs. Brackett.

In a controverting affidavit, Mrs. Brackett specifically denied that portion of Mrs. Healy's affidavit stating:

"Mrs. Brackett further stated that she was thoroughly convinced, before she heard any evidence in this case, that this whole area where plaintiffs' houses were located was resting upon dangerous slide ground."

She further stated that at no time during the deliberations of the jury did she hear any juror express his opinion that the county contributed to the plaintiffs' damage by reason of the culvert, and that there was nothing that she said in the jury room at any time by which any juror could gather or understand that the whole area was resting upon dangerous slide ground. She also denied the statements attributed to her by the juror Carmichael.

It is significant that her denial was limited to the making of specific statements in the jury room. She did not deny the conversation with the plaintiffs' attorney or her previous knowledge of the condition of the premises involved in the suit.

Her husband, Earl Brackett, also a juror, made affidavit confirming the correctness of his wife's affidavit.

At the conclusion of the hearing upon the motions, the trial court, in announcing its decision, said:

"I do not believe the plaintiffs have had a fair trial because they have only had eleven jurors at the best, Mrs. Brackett being wholly unqualified to sit as a juror in this case, and, as a result, it was never possible for the plaintiffs to convince more than eleven jurors. For that reason alone I think plaintiffs are entitled to a new trial."

An order was entered granting a new trial, from which the defendant appeals. The order appealed from recites that it was granted,

" . . . upon the sole ground that one, Mary Brackett, was disqualified to act as a juror because of the matters and things set forth in the affidavits filed herein in support of plaintiff's motion for a new trial herein."

The basis of the order was thus rested principally upon the ground of Mrs. Brackett's initial disqualification to sit as an impartial juror in the case, by reason of her knowledge of the facts. While the affidavits of the plaintiffs charged that she had attempted to influence the jurors by the recital of facts known to herself, the court did not rest its order upon this charge of misconduct, but on the broader ground that the plaintiffs did not have the jury of twelve impartial jurors guaranteed by law. With this view, we are in agreement.

The appellant cites the case of *Hamilton v. Snyder,* 182 Wash. 688, 48 P. (2d) 245, where we said:

"We have little actual knowledge of what takes place within the jury room, but it is not going too far, we think, to say that frequently the strong characters dominate the weaker ones; and to open the door to testimony showing such practices, would be to imperil every verdict hereafter rendered and make jury trials most uncertain in their results."

But in the case before us, we have the broader question raised by the admitted disqualification of the juror to sit in judgment upon the case at all. Her unfitness was not disclosed by her preliminary examination on *voir dire,* so that the respondents are charged with no negligence in permitting her to sit. Her explanation to respondents' attorney, as recounted in his affidavit, that she did not understand the questions and that she did not realize her knowledge of the property involved until the jury had been brought to view it, while tending to acquit her of intentional wrongdoing,

does not change the fact of her disqualification to serve as a juror.

In *Heasley v. Nichols*, 38 Wash. 485, 80 Pac. 769, where it developed after verdict that one of the jurors, who upon his *voir dire* examination had testified that he was not acquainted with the plaintiff and knew nothing about the case, and had formed no impression, had in fact discussed the case before he became a juror and expressed his opinion in favor of one of the parties, the court said:

"It is plain that this juror was disqualified by reason of his bias and prejudice. He concealed the fact, and by reason of his misrepresentations was taken and permitted to sit upon the jury. Both sides to the controversy were entitled to twelve lawful and unbiased jurors to try the questions of fact in the case. When it was shown to the court that one of the twelve selected was unfit to sit as a juror, either party deeming himself aggrieved was entitled, as a matter of right, to a new trial."

The right to trial by jury includes the right to an unbiased and unprejudiced jury, and a trial by a jury, one or more of whose members is biased or prejudiced, is not a constitutional trial.

"A juror is not regarded as without this bias if he has a personal knowledge of the facts involved. A juror whose knowledge of the facts qualified him to give testimony was not deemed capable of trying the case impartially, . . ." 1 Hyatt on Trials, p. 705.

See *State v. Stentz*, 30 Wash. 134, 70 Pac. 241, 63 L. R. A. 807.

The order appealed from is affirmed, and the cause remanded to the superior court for further proceedings.

MILLARD, C. J., MITCHELL, STEINERT, and TOLMAN, JJ., concur.