[No. 40383. En Banc. December 31, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. VIVIAN PARNELL, *Appellant.**

*Reported in 463 P.2d 134.

504

 

*Hohlbein, Church, Sawyer & Vanderhoef,* by *Wesley G. Hohlbein,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Paul M. Acheson,* for respondent.

HILL, J.—Defendant appeals from the judgment and sentence entered upon a jury verdict finding her guilty of violating the state Uniform Narcotic Drug Act.

Her claim for new trial is predicated upon a single assignment of error. She insists that the trial court should have granted her motion to excuse a challenged juror for cause.

When the prospective jurors were asked on voir dire if they were acquainted with the defendant or any of the attorneys in the case, Mr. Arthur L. Martin, one of the veniremen, responded:

Well, Your Honor, I am not really sure, but in a traffic accident that happened to me in October, a collection agency wanted to collect some damages to the trailer that was struck and I had to go to court and I was diverted to the wrong courtroom and I believe I sat in and heard some of the preliminary hearing involving this particular young lady. THE COURT: Involving Miss Parnell? THE JUROR: Yes. THE COURT: You have no personal acquaintance with her other than that? THE JUROR: No, no.

Defendant challenged venireman Martin for cause after the state had examined him on voir dire. She again challenged him for cause during the voir dire examination by her trial counsel, but the court denied the challenge on each of those occasions. Subsequently, defendant exercised her fourth peremptory challenge to excuse Mr. Martin as a juror.

The record then indicates that defendant, having used all of her peremptory challenges, asked the court for an additional peremptory challenge since she had been required

to use one against venireman Martin who she contended should have been excused for cause. The request was denied.

Mr. Martin's presence at the preliminary hearing was no momentary or casual matter. He sat through the hearing and was "fairly attentive." The testimony at such hearings takes a much wider range than at a trial, where the rules of evidence are more strictly enforced. Indeed, the defense at a preliminary hearing is interested in knowing the full extent of the state's case, rather than trying to limit it, and there may be few or no objections to the state's proffered testimony.

Although Mr. Martin denied getting "any impression" as a result of what he heard at the preliminary hearing his response to one of defense counsel's questions was most revealing:

QUESTION: [G]enerally speaking we hope, of course, to have jurors that know little or nothing about the case. Knowing this and knowing that you sat in for two hours and that you heard the preliminary hearing, don't you think that it might just be possible in the back of your mind somewhere you might think back to something you heard at that time? Don't you think if you were sitting in her shoes you would rather excuse yourself and say, perhaps, for the interest of justice you should excuse yourself? ANSWER: I would say in the interest of justice I think it would be appropriate for me to stay where I am until I am dismissed on your peremptory, but I do not think I have any preconceived ideas about it because it was very vague and there was no rulings given. I just remember her.

The answer indicates a knowledgeable individual who obviously intends to force the defense to use one of its peremptory challenges to get rid of him. He succeeded, because no defense attorney under such circumstances would dare to leave the person making such an answer on the jury, no matter what he might say about having no preconceived opinion.

The state endeavors to equate the impression received from sitting through a preliminary hearing with the read-

ing of newspaper accounts or hearing radio reports of the offense for which a defendant is placed on trial. We cannot agree. The setting and the purpose are entirely different. The witnesses testifying at a preliminary hearing are under oath and subject to the pains and penalties of perjury. Such testimony must of necessity make a different impression on an observer than would reading a newspaper or hearing a newscast.

Under the heading *Juror's presence at or participation in prior criminal proceedings involving the accused* in 47 Am. Jur. 2d *Jury* § 273, p. 849 (1969) we find the following statement:

> There is some authority that the mere presence at a prior trial of a criminal case or related hearing does not disqualify a juror in a subsequent criminal case involving the same defendant. According to some cases, however, a juror's mere presence at a prior proceeding involving the same defendant will render that juror incompetent to serve, without any showing that the juror has formed an opinion regarding the guilt or innocence of the defendant.

(Footnotes omitted.)

As indicated in the quotation there is a split of authority on the proposition as to whether mere presence at a defendant's preliminary hearing, or a related hearing, will ipso facto disqualify a prospective juror. The majority rule appears to be that it is usually a question for the trial judge to decide on the basis of whether there is actual prejudice or bias.[1]

It seems to us that there is much merit in the position taken by the Arkansas[2] and Oklahoma[3] courts, that the presence of a prospective juror at a preliminary hearing occurs so seldom and the chances of prejudicial impressions

---

[1]There is a recent (1966) and extensive annotation entitled *Juror's presence or participation in trial of criminal case (or related hearings) as ground for disqualification in subsequent criminal case involving same defendant.* 6 A.L.R.3d 519.

[2]*Lane v. State,* 168 Ark. 528, 270 S.W. 974 (1925).

[3]*Harvey v. State,* 46 Okla. Crim. 257, 287 P. 834 (1930).

are so great that there should be a conclusive presumption of prejudice.

■■ Washington, like every other state, is committed to the proposition that the right to a trial by jury includes the right to an unbiased and unprejudiced jury, and that a trial by a jury, one or more of whose members is biased or prejudiced, is not a constitutional trial. *Alexson v. Pierce County*, 186 Wash. 188, 57 P.2d 318 (1936); or as was said by Mr. Justice Clark in *Irvin v. Dowd*, 366 U.S. 717, 722, 6 L. Ed. 2d 751, 81 S. Ct. 1639 (1961):

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. *In re Oliver*, 333 U. S. 257; *Tumey v. Ohio*, 273 U. S. 510. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U. S. 133, 136. In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as "indifferent as he stands unsworne." Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial. Cf. *Thompson v. City of Louisville*, 362 U. S. 199. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 (1807). "The theory of the law is that a juror who has formed an opinion cannot be impartial." *Reynolds v. United States*, 98 U. S. 145, 155.

(Footnote omitted.)

Our statute pertaining to the challenging of prospective jurors in criminal actions, RCW 10.49.040, provides that:

> Challenges for cause shall be allowed for such cause as the court may, in its discretion, deem sufficient, having reference to the causes of challenge prescribed in civil cases, as far as they may be applicable, and to the *substantial rights of the defendant.*

(Italics ours.)

As indicated, it is our view that Mr. Martin's presence throughout the defendant's preliminary hearing was in it-

self sufficient to disqualify him as a juror, but when coupled with his obviously hostile answer heretofore quoted, it seems clear to us that he should have been excused for cause.

█ Any error involved in failing to grant the defendant's challenge for cause against venireman Martin was not obviated by the fact that he did not sit on the jury. To remove him from the panel required the exercise of one of the defendant's six peremptory challenges. All of her peremptory challenges were eventually used, and she requested an additional peremptory to replace the one used on venireman Martin. This was denied. In *State v. Stentz,* 30 Wash. 134, 70 P. 241, 63 L.R.A. 807 (1902), we held:

> A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury.

We had earlier applied the same rule in *State v. Rutten,* 13 Wash. 203, 43 P. 30 (1895) and later recognized its propriety in *State v. Patterson,* 183 Wash. 239, 48 P.2d 193 (1935).

The conviction and sentence appealed from are set aside and the defendant is granted a new trial.

This may seem to be no more than a delaying gesture, but more important than speedy justice is the recognition that every defendant is entitled to a fair trial before 12 unprejudiced and unbiased jurors. Not only should there be a fair trial, but there should be no lingering doubt about it. It should be noted that defendant was represented on this appeal by court appointed counsel who have ably presented both written and oral arguments to the court.

HUNTER, C. J., ROSELLINI, HALE, and NEILL, JJ., concur.

McGOVERN, J. (dissenting)—I dissent. The trial court appropriately considered all relevant information before it and determined that venireman Martin was a qualified juror.

Because the record adequately supports that determination, we should affirm.

The total examination of Mr. Martin regarding his presence at defendant's preliminary hearing was as follows:

THE COURT: Now I will ask the jurors in the box, is there any of you that has an acquaintanceship with Vivian Parnell or with either of the attorneys? JUROR No. 3 (Arthur L. Martin): Well, Your Honor, I am not really sure, but in a traffic accident that happened to me in October, a collection agency wanted to collect some damages to the trailer that was struck and I had to go to court and I was diverted to the wrong courtroom and I believe I sat in and heard some of the preliminary hearing involving this particular young lady. THE COURT: Involving Miss Parnell? THE JUROR: Yes. THE COURT: You have no personal acquaintance with her other than that? THE JUROR: No, no. THE COURT: The names I have of people who might be witnesses in this case are read to you to see if you have any acquaintance with such persons: Detective Henaby, Detective Kirschner, Detective L. L. Hart, Detective C. O. Jett, K. M. Sweeney, LaVerne Jones, James Squires.

Is there any of you in the box that has any acquaintance with any of the persons whose names I have just read? JUROR No. 3 (Arthur L. Martin): Just that I am pretty sure now I was waiting in the courtroom in Judge Hoar's court at the time of the preliminary hearing. These witnesses' names were brought out then. THE COURT: You were there on another matter? THE JUROR: Yes. I was in the wrong department. THE COURT: You heard part of this in the preliminary? THE JUROR: Yes. . . . BY MR. HOHLBEIN: Q. Mr. Martin, were you—how long were you in the preliminary hearing? A. I was in there—actually I was in Judge Hoar's court for about two hours. A. Whose court? A. Judge Hoar. Q. Yes? A. I was in there approximately two hours. Q. Did you listen to the case pretty much down there? A. Well, inasmuch as the policemen at the time came forth and they just give a little preliminary—Q. Don't say what anybody said. A. No, I am not saying that. The only thing I am saying is that they presented the matter. Q. You listened fairly attentively to the case? A. Fairly, yes. Q. And after you listened to it I suppose you gained some impression? A. No, I didn't really get an impression. I had my own

problems on that particular day and I just happened to notice that the charge was brought up and the witnesses' names were called off and this lady was sitting at the table with counsel. Q. Did you recognize me? A. Come to think of it, I think you were there. I am not too sure. Q. Now do you remember I made no objections during the course of that preliminary hearing? A. I don't really recall. Q. It is your best recollection no objections were made? A. Not to my knowledge, no. . . . Q. The main idea is to have jurors that know nothing about the case and that when they try the case in the jury room they are trying it on the evidence they hear in this courtroom here. A. Right. Q. And they are trying it in terms of rules laid down by the Court and the evidence they hear, and of course, generally speaking, we hope, of course, to have jurors that know little or nothing about the case. Knowing this and knowing that you sat in for two hours and that you heard the preliminary hearing, don't you think that it might just be possible in the back of your mind somewhere you might think back to something you heard at that time? Don't you think if you were sitting in her shoes you would rather excuse yourself and say, perhaps, for the interest of justice you should excuse yourself? A. I would say in the interest of justice I think it would be appropriate for me to stay where I am until I am dismissed on your peremptory, but I do not think I have any preconceived ideas about it because it was very vague and there was no ruling given. I just remember her. Q. You must be careful what you say. This is what I am trying to avoid. A. I am just telling you I remember her from her face is all. Q. So if you were in her shoes you would be perfectly happy with a juror such as your-self? A. I believe I would.

Following that examination, defendant's challenge of venireman Martin for cause and her request for an additional peremptory were both denied by the court.

In denying the challenge for cause, the trial court looked to the appropriate statutes as a guideline to its ruling on the motion. RCW 4.44.170 provides:

Particular causes of challenge are of two kinds:
(1) For such a bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this code as implied bias.

(2) For the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the trier in the exercise of a sound discretion, that he cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias.

RCW 4.44.180 then defines an implied bias with more particularity.

A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:

(1) Consanguinity or affinity within the fourth degree to either party.

(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to the adverse party; or being a member of the family of, or a partner in business with, or in the employment for wages, of the adverse party, or being surety or bail in the action called for trial, or otherwise, for the adverse party.

(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.

(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

After considering the facts before it, and after applying those facts to the statutory causes said to constitute an implied bias, the trial court concluded that juror Arthur L. Martin was not impliedly biased against the defendant. It therefore denied the challenge. My consideration of the record before us and of the same statute leads me to concur in that conclusion. RCW 4.44.180 has no application to the facts.

Defendant also argues that the trial court should have concluded that juror Martin had an actual bias against her and should have been excused for that reason.

Certainly a juror must be indifferent between the parties. A fundamental constitutional condition attached to every

jury trial is that each juror hearing the case must be impartial. Const. art. 1, § 22. If a juror is prejudiced against a party to the action, then that party cannot receive a fair and just hearing and he has been deprived of a constitutional trial. It is therefore the responsibility of the trial court to consider all of the facts before it and from those facts to determine if the challenged juror does or does not hold an actual bias against a party involved in the proceeding. To that end, the trial court must consider all of the particulars that will help in its decision, including the outward manner of the juror as indicating a fixed, preconceived opinion or prejudice. It must fully and fairly consider each of the juror's answers to the questions asked of him and determine whether or not those answers were truthfully, candidly and completely made. *State v. Patterson*, 183 Wash. 239, 48 P.2d 193 (1935).

The competency or qualification of the juror is left to the determination of the trial court. That court should examine and consider to the best of its ability the frame of mind of the juror being questioned. It should pursue every available source of information which is calculated and needed to assist in its decisional process. And the answers given by that juror on his voir dire examination are not binding on the court.

The ultimate question to be decided by the trial court is not whether the juror holds certain preconceived ideas, opinions or impressions, or if he is possessed of facts relating to the cause of action. The real test is whether or not "he can put [those] notions aside and decide the case on the basis of the evidence given at the trial and the law as given him by the court." *State v. White*, 60 Wn.2d 551, 569, 374 P.2d 942 (1962). If otherwise qualified, a juror is competent if he can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

The trial court here properly considered all matters before it and determined that juror Arthur L. Martin could impartially decide the case on the evidence presented at the trial. It therefore denied the challenge for cause. I would

not disturb that ruling, for "The granting or denial of a challenge for cause is within the discretion of the trial judge, and will not constitute reversible error in the absence of a manifest abuse of discretion." *State v. Aiken,* 72 Wn.2d 306, 350, 434 P.2d 10 (1967). I find no abuse of discretion in the ruling of the court. Mr. Martin had no personal acquaintanceship with the defendant; he apparently answered all questions with candor and completeness. In response to the question "Do you think of any reason at all why you couldn't be a fair and impartial juror in a case like this?", he answered "No, I don't see why I could not be." He said that he gained no impression from the testimony he heard during the preliminary hearing and that he did not "have any preconceived ideas" about the case. "The trial judge heard the answers of this juror and was in a better position than we to observe [his] attitude and demeanor." *State v. Bird,* 31 Wn.2d 777, 780, 198 P.2d 978 (1948). I find that the conclusion of the trial court is well supported by the record.

The judgment and sentence should be affirmed.

FINLEY, WEAVER, and HAMILTON, JJ., concur with Mc-GOVERN, J.

February 9, 1970. Petition for rehearing denied.