# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JEFFREY JOSEPH THOMAS,

Appellant.

No. 77846-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 16, 2019

MANN, A.C.J. — Jeffrey Thomas appeals the judgment and sentence imposed pursuant to his jury conviction for first degree assault with a firearm and possession of heroin. Thomas argues that he was denied his constitutional right to a fair and impartial jury when the trial court denied his challenge for cause to two potential jurors and he had to exercise peremptory challenges to strike the jurors. He also contends that multiple instances of prosecutorial misconduct violated his right to a fair trial. We remand for the trial court to recalculate Thomas's offender score and to strike the DNA collection fee from the judgment and sentence. In all other respects, we affirm.

I.

At around 9:45 p.m. on New Year's Eve, 2016, Daniel Smith was waiting at a bus stop at Third Avenue and Pike Street in Seattle. He saw a car driving north and a person leaning out of the car window, yelling at someone. Smith turned and saw a man running north with his arm up, approximately 10 or 15 feet away. He noticed "a very dark mechanism" in the man's hand, pointed towards the car. He described it as a handgun, possibly a Glock, "kind of rectangular in shape, kind of boxy." The man fired multiple shots, and Smith was hit in the arm.

Three law enforcement officers with the Seattle Police Department and the Department of Corrections (DOC) were on an "emphasis patrol" that evening, stationed in a van parked at the corner of Third Avenue and Pine Street. Officer Michael Stankiewicz heard between eight and ten gunshots. He got out of the van and saw, approximately 20 feet away, "a black male running northbound on the sidewalk with his right arm raised and gun in it still pointing kitty-corner across the street." Officers later identified the man as Jeffrey Thomas.

Stankiewicz identified himself as law enforcement and ordered Thomas to drop the gun and get on the ground. Thomas looked at Stankiewicz, turned around, and ran the opposite direction, disappearing into a crowd of people. Stankiewicz yelled "Where did he go?" to the crowd. At that moment, Thomas "popped back out of the crowd" and began running northbound on Third Avenue. Several members of the crowd pointed at Thomas, yelling "That's him."

Detective Matthew Lilje pursued Thomas northbound. He saw Thomas make a movement with his hand towards his waistband and "put something

2

underneath the bus that looked like a black object." Lilje heard the object "skidding across the ground . . . like it was made out of metal." He found a Glock handgun on the ground in the area he had seen Thomas throw the object. In a search incident to arrest, officers found heroin in Thomas's possession.

The State charged Thomas with first degree assault with a firearm and possession of heroin.[1] A jury found Thomas guilty as charged. Thomas appeals.

II.

Thomas first argues that the trial court violated his right to a fair and impartial jury under the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington Constitution when it denied his motion to exclude two potential jurors for cause. He contends that, because he was forced to use peremptory challenges to strike the two jurors, he is entitled to automatic reversal of his convictions. We disagree.

During jury selection, the court asked potential jurors whether they could "without hearing the facts of the case think of any reason at all that [they] could not be fair and impartial in judging this case." Several jurors raised their hands, including Juror 8 and Juror 51.

Juror 8 stated that he had "always been very anti-drugs" and that he "hoped" he could be impartial in a case in which drugs were involved. Thomas challenged Juror 8 for cause. The State objected, arguing, "He's a conscientious

---

[1] The State also charged Thomas with first degree unlawful possession of a firearm. Thomas waived his right to a jury trial on the firearm charge and was found guilty after a bench trial.

juror. He wants to do well. And it's just a general dislike for drugs and it's a criminal offense." The court denied the challenge.

Juror 51 stated that he had "this preconceived notion that if there's smoke, there's always the fire" and that "if this person is charged with something, this person must have done something that is incorrect or not right." He stated that he would be able to maintain an open mind and listen to the evidence before making a decision. But he also stated that he would "[m]ost likely" require Thomas to have the burden of proving "that something did not happen." And he again reiterated, "I have the feeling I think most likely something must have happened." After being questioned by the prosecutor, defense counsel and the court, Juror 51 ultimately agreed that he would "have to listen to everything and hear and then make the judgment call at the end." He stated that he would follow the court's instructions and base his decision only on the evidence. Thomas challenged Juror 51 for cause, arguing that the juror continued to believe that the defense had the burden of proof "to provide evidence that either something did not happen or this was not the individual who did something of what had happened." The court denied the challenge, stating that Juror 51 "indicated that he could hold the State to its burden and follow the court's instructions."

The court gave the State and Thomas each six peremptory challenges with regard to the first 12 jurors and two peremptory challenges for the alternate jurors. Thomas used his fourth and fifth peremptory challenges to strike Juror 8 and Juror 51.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee every criminal defendant "the right to a fair and impartial jury." State v. Brett, 126 Wn.2d 136, 157, 892 P.2d 29 (1995). To ensure that right, a juror shall be excused for cause if his or her views would "prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath." State v. Hughes, 106 Wn.2d 176, 181, 721 P.2d 902 (1986); see also RCW 4.44.170(2) (a prospective juror may be challenged for cause when there is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging.")

In State v. Parnell, 77 Wn.2d 503, 463 P.2d 134 (1969) abrogated by State v. Fire, 145 Wn.2d 152, 34 P.3d 1218 (2001), the Washington Supreme Court held that if a trial court erroneously denies a challenge for cause, thus forcing the defendant to exercise a peremptory challenge to remove the juror, the error is presumptively prejudicial and requires reversal if the defendant subsequently exhausts his or her peremptory challenges.

> A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury.

Parnell, 77 Wn.2d at 508.

But within the next several years, courts in Washington began to depart from this holding. In State v. Latham, 100 Wn.2d 59, 64, 667 P.2d 56 (1983), the court noted that "the use of a peremptory challenge to remove a juror who should have been removed for cause cures" any error and that "the defendant must show that the use of the peremptory challenge actually prejudiced his case." (Internal quotations omitted.) The court explicitly declined to address whether a defendant is prejudiced by the use of a peremptory challenge on a juror who should have been excused for cause.

In State v. Rupe, 108 Wn.2d 734, 749, 743 P.2d 210 (1987), the court again held that a defendant's use of a peremptory challenge to remove a juror cures any error, and that a defendant would "have to show that he was prejudiced by having to use peremptory challenges to remove jurors who should have been removed for cause." The court concluded that the defendant "cannot do so" because the defendant had been granted the number of peremptory challenges he was entitled to by the death penalty statute in effect at the time. Rupe, 108 Wn.2d at 749-50.

In United States v. Martinez-Salazar, 528 U.S. 304, 311, 120 S. Ct. 774, 777-80, 145 L. Ed. 2d 792 (2000), the United States Supreme Court held that peremptory challenges "are not of federal constitutional dimension" and the federal constitutional right to an impartial jury is not violated when a trial court denies a challenge for cause and the defendant then uses a peremptory challenge to strike the challenged juror. Later the same year, Washington explicitly adopted the holding of Martinez-Salazar in State v. Roberts, 142 Wn.2d

471, 517, 14 P.3d 713 (2000). The court held that "[i]t is well established that an erroneous denial of a challenge for cause may be cured when the challenged juror is removed by peremptory" and that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Roberts, 142 Wn.2d at 518.

But it was not until State v. Fire, 145 Wn. 2d 152, 34 P.3d 1218 (2001) that the Washington Supreme Court explicitly abrogated Parnell.[2] A five-justice majority, relying on Martinez-Salazar, held that the erroneous denial of a challenge for cause is not a due process violation under the federal constitution. The majority also addressed the implication that while the defendant "may not have had any grounds for relief under the United States Constitution and federal case law, he does under the Washington Constitution and Washington case law. Fire, 145 Wn.2d at 159. The majority held that there is no difference between the right to an impartial jury guaranteed under the federal constitution and that guaranteed under the Washington constitution, and thus no reason to analyze whether the defendant's state constitutional rights were violated.

> No Washington case has thus far recognized a difference between the right to an impartial jury guaranteed under the federal constitution and that guaranteed under the Washington constitution . . . Thus, Washington law does not recognize that article I, section 22 of the Washington State Constitution provides more protection than does the Sixth Amendment to the United States Constitution.

---

[2] Justice Alexander concurred with the result in Fire. He wrote a separate concurring opinion to state his belief that Parnell had not been tacitly abandoned, as the majority suggested, but instead remained good law up until Fire.

Hence, Martinez-Salazar defines the scope of a defendant's right to an impartial jury in this situation.

Fire, 145 Wn.2d at 163.[3]

Thomas argues that this court should hold that the Parnell rule is required under the Washington constitution. He contends that because Fire did not address what rule is required under the Washington constitution, it is not controlling on that point. But the majority in Fire was clear that a defendant does not possess a separate right to an impartial jury under the Washington constitution.[4] Fire, 145 Wn.2d at 163. And Thomas cites no cases in support of

---

[3] Subsequent cases addressing the issue have followed the reasoning in Fire. See, e.g., State v. Yates, 161 Wn.2d 714, 746, 168 P.3d 359 (2007) ("[W]here a defendant exercises a peremptory challenge after the court denies a defense motion to excuse the juror for cause, any potential violation of the defendant's Sixth Amendment right to an impartial jury is cured."); State v. Schierman, 192 Wn.2d 577, 632, 438 P.3d 1063 (2018) ("Where a trial court erroneously denies a defendant's for-cause challenge and the defendant is forced to use a peremptory challenge to cure the trial court's error, his rights are not violated so long as he is subsequently convicted by a jury on which no biased juror sat."); State v. Clark, 170 Wn. App. 166, 194, 283 P.3d 1116 (2012) ("A defendant must demonstrate prejudice as a result of the court's failure to strike a juror for cause…If the challenged juror did not ultimately sit on the jury, the defendant cannot show prejudice."); In re Pers. Restraint of Stockwell, 160 Wn. App. 172, 181, 248 P.3d 576 (2011) ("As long as the selected jury is impartial, the fact that Stockwell had to use a peremptory challenge to ensure that result does not violate his right to an impartial jury."); Hill v. Cox, 110 Wn. App. 394, 410, 41 P.3d 495 (2002) ("[E]ven if a juror should have been excused for cause, once a peremptory challenge is exercised, some showing that a biased juror actually sat on the case is required.")

[4] Justice Alexander joined in this result, and also separately wrote that the state constitutional right to a fair and impartial jury was co-extensive with the federal right:

The Court's decision in Martinez-Salazar makes perfect sense to me and is a far better rule than that which we enunciated in Parnell. More importantly, the rule does not trample on any constitutional rights guaranteed by the Sixth Amendment to the United States Constitution or Washington Constitution article I, sections 21, 22.

The language of article I, section 22 of our state constitution is similar to that of the Sixth Amendment and has been construed to ensure and protect one's right to a fair and impartial jury. State v. Davis, 141 Wn.2d 798, 855, 10 P.3d 977 (2000). In addition, Washington Constitution article I, section 21 states that a defendant has a right to be tried by an impartial

the proposition that the state constitutional right to a fair and impartial jury in article I, section 21 and 22 is greater than that afforded under the Sixth Amendment.[5] See, e.g., State v. Munzanreder, 199 Wn. App. 162, 174, 398 P.3d 1160 (2017) ("In nearly 100 years, our state has yet to recognize any state or local concern with respect to a defendant's right to an impartial jury that would justify interpreting article I, section 22 differently than how federal courts have interpreted the Sixth Amendment.").

Because a defendant must show prejudice from the use of a peremptory challenge on a biased juror, and the use of a peremptory challenge in and of itself does not constitute prejudice, Thomas does not establish reversible error. Thomas cured any potential error by exercising his peremptory challenges as to Juror 8 and Juror 51.

---

12 person jury. State v. Gentry, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995) (applying Wash. Const. art. I, § 21). Neither provision provides that a person has a right to a jury containing a particular juror or jurors. I subscribe to the view that these constitutional rights are not infringed when a defendant exercises a peremptory challenge to cure an erroneously denied for cause challenge. Like the United States Supreme Court, I would hold that unless a defendant can show prejudice, the mere fact that one uses his or her peremptory challenge to cure a wrongfully denied for-cause challenge does not establish a constitutional violation.

Fire, 145 Wn.2d at 167.

[5] Instead, Thomas relies on cases asserting the more general proposition that the Washington constitution provides greater protection of the right to a jury trial than the federal constitution.

III.

Thomas next alleges that the prosecutor committed misconduct by eliciting testimony in violation of several pretrial orders. He contends that the misconduct entitles him to a new trial. We disagree.

A claim of prosecutorial misconduct requires the defendant to show both that the prosecutor made improper statements and that those statements caused prejudice. State v. Lindsay, 180 Wn.2d 423, 440, 326 P.3d 125 (2014). But if the defendant fails to object to the alleged misconduct, or request a curative instruction, any error is waived unless the conduct is "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice" that could not have been neutralized by a curative instruction to the jury. State v. Hoffman, 116 Wn.2d 51, 93, 804 P.2d 577 (1991). In evaluating a claim of prosecutorial misconduct, this court reviews a prosecutor's remarks "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

First, Thomas argues that the prosecutor repeatedly violated the court's order to refer to Thomas by name instead of as "the defendant." A review of the prosecutor's opening statement shows that the prosecutor repeatedly used the phrase "the defendant," in violation of the court's ruling. But defense counsel also repeatedly referred to Thomas as "the defendant" during voir dire. Moreover, Thomas did not object or seek curative action. Where a party prevails on a motion in limine to restrict certain evidence, that party has a duty to make a

timely objection if the evidence is introduced. State v. Sullivan, 69 Wn. App. 167, 171-72, 847 P.2d 953 (1993). By failing to object to the prosecutor's opening statement, Thomas has waived review unless he can show that the violation could not have been cured by an instruction or admonishment. He does not do so.

Thomas next contends that a witness violated a pretrial order excluding any mention of the fact that responding officers were associated with the "gang unit." Officer Kalin Todorov testified that he was responsible for conducting an inventory of Thomas's property at the hospital. Amongst Thomas's possessions, he found a paper bag containing several small Ziploc baggies full of heroin. The prosecutor asked Todorov what he did after this discovery, and Todorov responded that "[t]wo gang unit detectives came to the hospital while I was still at the hospital."

The State has a duty to prepare its witnesses for trial, including instructing witnesses regarding the court's pretrial rulings. State v. Montgomery, 163 Wn.2d 577, 592, 183 P.3d 267 (2008). But there is no evidence that the prosecutor failed to instruct the witness or attempted to violate the court's ruling by eliciting an improper answer. And even assuming prosecutorial misconduct was responsible for the witness's response, Thomas did not object to this testimony or move for a mistrial. Thomas fails to show that the isolated remark was so prejudicial as to warrant reversal.

Thomas next argues that a witness violated a pretrial order excluding evidence that Thomas was on DOC supervision. Lieutenant Leslie Mills testified

that she was responsible for collecting and bagging several items taken from Thomas at the time of his arrest. During cross-examination, defense counsel asked her whether she collected a pair of gloves or a knit cap. Mills responded, "I don't recall the items. The only item I recall is a driver's license where I wrote the name and date of birth down on a piece of paper and handed it to [another officer] so I could verify information about his DOC activity on my computer." Defense counsel moved for a mistrial, arguing that "[t]his jury now knows that Mr. Thomas has been supervised by the Department of Corrections . . . [a]nd so the inference from DOC's supervision is that he's a convicted felon." The court denied the mistrial.[6]

Again, Thomas does not show that the prosecutor committed misconduct by failing to instruct the witness regarding the court's pretrial rulings. And while a witness's mention of DOC in other cases may constitute enduring prejudice, we conclude that, under the unique circumstances of this case, it did not. Several of the law enforcement officers involved in the case were DOC officers conducting an emphasis patrol in conjunction with the Seattle Police Department. As the court noted, "I don't think there's any inference whatsoever that the DOC officers being present had anything to do with Mr. Thomas or that they knew who he was. The testimony has been crystal clear that it was part of an emphasis patrol and a joint organization."

---

[6] Thomas does not contend that the court abused its discretion in denying a mistrial.

Thomas next contends that a witness violated a pretrial order excluding hearsay by police officers. The prosecutor asked Detective Robert Sevaaetasi, the investigating officer, why he did not submit the gun for fingerprint analysis. Sevaaetasi testified that fingerprint analysis was unnecessary because there was ample evidence that Thomas had possessed the gun, including the fact that several officers saw Thomas throw the gun under the bus. Sevaaetasi stated, "And the way it was described, the officer said he saw the gun tossed, it made a metallic clanking noise as it hit the sidewalk." Defense counsel objected on hearsay grounds. The court overruled the objection, stating, "It's not being offered for the truth of the matter asserted. It's the answer to why he did what he did, so I'll allow it."

Thomas argues that the testimony was contrary to the pretrial rulings excluding "[a]ll statements by police officers regarding why they did what they did." But the record shows that defense counsel requested —and the court ordered—only the exclusion of hearsay statements conveyed by a police dispatcher. Sevaaetasi's testimony did not violate the court's pretrial ruling.

Finally, Thomas argues that Sevaaetasi also violated a pretrial order prohibiting testimony regarding field testing. Thomas requested the court exclude "any field test of any substance conducted in this case" because "[a] field test is insufficient to establish whether a substance is a controlled substance." Sevaaetasi testified that he submitted the baggies of heroin found on Thomas to the Washington State Patrol Crime Laboratory for analysis. When the prosecutor asked whether the heroin appeared to be in the same general condition as when

the detective submitted it to the laboratory, Detective Sevaaetasi responded, "Yes it is. I note that I actually field-tested one of the packets for heroin." Defense counsel objected. At defense counsel's request, the court ordered the testimony stricken.

Here, Sevaaetasi's testimony clearly violated the court's pretrial order barring any reference to field testing. Nevertheless, Thomas fails to establish that he was prejudiced by the testimony. A scientist at the Washington State Patrol Crime Laboratory testified as to the process by which he tested the substance for identification. It was uncontroverted that the substance was heroin. Any reference to a field test conducted by Sevaaetasi was merely cumulative of this testimony. Under the circumstances of this case, Thomas's right to a fair trial was not violated.[7]

## IV.

Thomas challenges the inclusion of a 2009 Louisiana conviction for "attempted simple robbery" in the calculation of his offender score. He argues that robbery in Washington contains a nonstatutory element of specific intent to steal, whereas simple robbery in Louisiana is a general intent crime that does not

---

[7] In a pro se statement of additional grounds, Thomas argues that "[t]he prosecutor committed misconduct by lying to the court that an investigation of a State key witness who was being investigated by the Office of Police Accountability for lying and stealing money from the Seattle Police Department [sic]." During pretrial motions, the prosecutor informed the court and defense counsel that an internal investigation involving Officer Stankiewicz had been completed and found to be unsubstantiated. Thomas appears to contend that this was inaccurate. But there is no evidence in the record to support his claim. If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition. State v. McFarland, 127 Wn.2d 322, 355, 899 P.2d 1251 (1995).

require a specific intent to steal. The State concedes that the Louisiana offense is not legally comparable to a Washington offense and should not have been included in his offender score.

Thomas also challenges the trial court's imposition of a $100 DNA collection fee as part of his sentence. The State concedes that the DNA collection fee must be stricken because Thomas is indigent and because his DNA was collected following a prior felony conviction. Although these fees were mandatory when imposed, the Washington Supreme Court has since held in State v. Ramirez, 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018) that courts may not impose discretionary legal financial obligations on an indigent criminal defendant. We accept the State's concessions of error and remand for the trial court to recalculate Thomas's offender score and to strike the DNA collection fee from the judgment and sentence.

We remand for resentencing consistent with this opinion. In all other respects, we affirm.

_Mann, ACJ_

WE CONCUR:

_____        _Leach, J._

15