[No. 15646-0-III. Division Three. March 3, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. TOBIAS ROBERT STACKHOUSE, *Appellant*.

BROWN, J., dissents by separate opinion.

*Lorraine A. Parlange*, for appellant.

*James R. Sweetser, Prosecuting Attorney*, and *Larry D. Steinmetz, Deputy*, for respondent.

SWEENEY, J. — This is a first degree murder case. In response to Tobias Stackhouse's motion in limine, the trial judge ruled there would be no mention and no evidence of another recent prior murder by Mr. Stackhouse in Pend Oreille County (Roscoe murder). The court found that such evidence would be highly prejudicial and serve no legitimate evidentiary purpose, i.e., motive, intent, opportunity. But the court later denied Mr. Stackhouse's challenges for cause to two jurors who knew that he had been involved in the Roscoe murder. The question here is whether the refusal to excuse these two jurors was an abuse of discretion. We conclude it was and reverse and remand for retrial.

## FACTS

On January 11, 1995, Mr. Stackhouse and Jason Kukrall were arrested on Pend Oreille County charges for residential burglary and the murder of Steven Roscoe. They were arrested in Spokane and held in the Spokane County jail overnight. The following day, Spokane County deputies transported Mr. Stackhouse and Mr. Kukrall in separate vehicles to the Pend Oreille County jail. As Mr. Kukrall was being transported to Pend Oreille County, two Spokane police detectives rode in the car and questioned him about the murder of Linda Jaramillo-Guillen that occurred in Spokane County on November 30, 1994. Mr. Kukrall implicated himself and Mr. Stackhouse in that murder.

At the Pend Oreille County jail, Mr. Stackhouse was ushered into the jail library. There two Spokane detectives advised him of his *Miranda*[1] rights. He waived them, agreed to speak and confessed to the murder of Ms. Guillen in Spokane County.

Mr. Stackhouse was then taken from the jail library and arraigned for the murder of Mr. Roscoe. At the preliminary hearing, the court appointed counsel to represent Mr. Stackhouse on the Roscoe murder charges. Both Spokane

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

detectives attended the preliminary hearing. Mr. Stackhouse's attorney told him in court not to speak to anyone, including police.

Mr. Stackhouse was taken back to the Pend Oreille County jail. There the Spokane detectives asked for a taped confession on the Guillen murder. He agreed. On the tape, the detectives again read him his constitutional rights. He again waived them and admitted murdering Ms. Guillen.

As Mr. Stackhouse's confession was being recorded, his appointed attorney (on the Roscoe murder charges) tried to contact him. The jail supervisor told him that Mr. Stackhouse was unavailable. The lawyer assumed Mr. Stackhouse was being transported from the hearing. He waited for about 15 minutes. When the attorney became aware that Mr. Stackhouse was being interviewed, he demanded that the supervisor stop the interview. The jail supervisor left and returned a couple of times. The Spokane detectives finished taping the confession and left.

Mr. Stackhouse murdered Mr. Roscoe about five weeks after Ms. Guillen. Mr. Kukrall and Mr. Stackhouse were convicted of the Roscoe murder prior to this trial on Ms. Guillen's murder.

Mr. Stackhouse and Mr. Kukrall were charged with one count of first degree murder and in the alternative felony first degree murder during the commission of the robbery of Ms. Guillen. Prior to trial, the court severed an unrelated burglary charge from the murder charge. The court, however, denied Mr. Kukrall's motion to be tried separately from Mr. Stackhouse. Mr. Kukrall agreed to plead guilty to second degree murder and testify against Mr. Stackhouse.

In response to Mr. Stackhouse's motion in limine, the court ordered there be no mention or evidence of Mr. Kukrall's or Mr. Stackhouse's prior conviction for the murder of Mr. Roscoe. The trial court reasoned that to simply say to the jury "he's a murderer, therefore he must be a murderer, is a jerkitude factor. [It d]oesn't invite them to look at the facts of this case and make their decision on this case. It overwhelms. That's the 403 factor." Report of

Proceedings at 251. The trial court agreed, however, to allow the State to tell the jury that both Mr. Kukrall and Mr. Stackhouse had prior unnamed felonies.

During voir dire, two jurors admitted knowing that Mr. Stackhouse and Mr. Kukrall were involved in the Roscoe murder. Mr. Stackhouse challenged both for cause. The court denied both challenges. And both jurors were impaneled.

The jury found Mr. Stackhouse guilty of first degree murder.

## DISCUSSION

■ ■ The right to trial by a jury assumes the right to an unbiased and unprejudiced jury. Accordingly, if one or more members of the jury panel are biased or prejudiced, the constitutional right to trial by jury is denied. *State v. Parnell*, 77 Wn.2d 503, 507, 463 P.2d 134 (1969). But a defendant assigning error to the court's denial of a challenge for cause must show more than the mere possibility that the juror was prejudiced. *State v. Noltie*, 116 Wn.2d 831, 840, 809 P.2d 190 (1991) (citing 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE § 202, at 331 (4th ed. 1986)). And, therefore, unless it is very clear, the court's denial of a challenge for cause must be sustained. *Noltie*, 116 Wn.2d at 839; *State v. Witherspoon*, 82 Wn. App. 634, 637, 919 P.2d 99 (1996), *review denied*, 130 Wn.2d 1022 (1997).

The trial judge here appropriately prohibited the State from introducing evidence of Mr. Stackhouse's recent prior conviction for the murder of Mr. Roscoe. He concluded that evidence of this recent prior conviction for murder—the same type of crime Mr. Stackhouse was on trial for—would be overwhelmingly prejudicial and had no probative value. The judge was correct. *State v. Pam*, 98 Wn.2d 748, 762, 659 P.2d 454 (1983) (Utter, J., concurring) ("strong presumption against the admission of evidence of a prior conviction identical to that for which the defendant is on trial"), *overruled on other grounds by State v. Brown*, 111

Wn.2d 124, 761 P.2d 588 (1988), *aff'd on reh'g*, 113 Wn.2d 520, 782 P.2d 1013, 80 A.L.R.4TH 989 (1989). "Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" *Pam*, 98 Wn.2d at 761 (Utter, J., concurring) (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967), *cert. denied*, 390 U.S. 1029 (1968)). The court, however, refused to dismiss two jurors who knew of Mr. Stackhouse's involvement in the Roscoe murder.

Juror No. 6 responded in his jury questionnaire that he knew "[t]hey have been implicated in one other murder and one or the other may have confessed while in custody." In response to voir dire questioning, that same juror responded that "presumably because the average person would, yeah, I think, would think that maybe a person was more predisposed if they had been convicted, especially recently."

Juror No. 32 responded in her questionnaire that "Jason Kukrall and Tobias Stackhouse were also involved in another murder in or around Deer Park and that Jason Kukrall was guilty in that role." Again during voir dire, the juror responded "[t]hey were doing it together. I would think. That's how I would say involved." When asked how she would feel if the same two individuals were implicated in this murder, she responded: "I would feel the same way I did with that one. That they were both involved in whatever it was that—they're accused of." The responses are evidence of the very prejudicial taint which prompted the court's refusal to permit evidence of the previous recent murder. *Pam*, 98 Wn.2d at 761 (Utter, J., concurring).

The State relies on those cases that discuss the standards and appropriate analysis for gauging the effect of pretrial publicity. *Patton v. Yount*, 467 U.S. 1025, 1029, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984) (court upheld decision to impanel jurors who had knowledge from the press about the case, including defendant's confession which was not

admissible at trial); *State v. Rupe*, 108 Wn.2d 734, 750, 743 P.2d 210 (1987) (juror impaneled on the retrial of a defendant previously sentenced to death not biased by knowledge from the media about the case), *cert. denied*, 486 U.S. 1061 (1988). Those cases focus on a different question. The question there is whether the jurors can set aside information *about the case under consideration* and decide the case impartially on the facts presented at trial.

■ Much like the State's position in *Parnell*, the State here compares the impressions by the two jurors gained "with the reading of newspaper accounts or hearing radio reports of the offense for which a defendant is placed on trial." *Parnell*, 77 Wn.2d at 505-06. And like the court in *Parnell*, "[w]e cannot agree. The setting and the purpose are entirely different." *Id.* at 506. In *Parnell*, it was a preliminary hearing where witnesses are under oath. Here, it is knowledge of Mr. Stackhouse's involvement in another recent murder. A conviction that the trial court appropriately recognized was highly prejudicial to jurors deciding Mr. Stackhouse's involvement in a totally unrelated murder.

We conclude that the trial judge abused his discretion in denying Mr. Stackhouse's challenges to Juror No. 6 and Juror No. 32 for cause. *See State v. Brett*, 126 Wn.2d 136, 158, 892 P.2d 29 (1995) (denial of challenge for cause reviewed for abuse of discretion), *cert. denied*, 516 U.S. 1121 (1996); *Parnell*, 77 Wn.2d at 508 (new trial granted after court failed to disqualify a juror for cause who had knowledge from a preliminary hearing prejudicial to the defendant's rights at trial). While the express and implicit findings underlying the court's ER 404(b) or ER 609(a) rulings can be analyzed separately from its denial of Mr. Stackhouse's juror challenges, we believe that to do so would be an exercise in sophistry. The concerns—a fair trial and the prejudicial effect of this information—are the same.

We address other assignments of error that may be relevant on retrial.

Obtaining the Taped Confession. Mr. Stackhouse contends his Sixth Amendment right to counsel attached at the arraignment on the Pend Oreille County murder charges. And therefore his Fifth Amendment right to counsel during the taped confession of the Spokane murder had been invoked.

■ A defendant's invocation of his Sixth Amendment right to counsel does not also invoke his Fifth Amendment right to have counsel present during a later custodial interrogation on an unrelated charge. *State v. Stewart*, 113 Wn.2d 462, 478, 780 P.2d 844 (1989), *cert. denied*, 494 U.S. 1020 (1990). In *Stewart*, the court answered the same question now raised by Mr. Stackhouse: "Where an in-custody defendant's Sixth Amendment right to counsel is invoked at arraignment, but the defendant has not yet met with counsel, is the defendant's Fifth Amendment right to counsel violated when police interrogate the defendant on unrelated charges, procure a *Miranda* waiver, and obtain a confession?" The answer is no. *Id.* at 463.

Mr. Stackhouse argues that *Stewart* is not controlling because the State tricked him and he was confused. He contends the waiver of his rights was invalid because he had police from two different jurisdictions converging on him at once with questions about both crimes within a very short period of time. Police tricked him by refusing to tell him that his court-appointed Pend Oreille County attorney was trying to contact him during the taped confession. *Stewart* addresses his concerns. *Id.* at 474-78.

When a defendant is arraigned, he is specifically advised of the pending charges and asked if he wishes to have counsel represent him *on those charges*. *Id.* at 474 n.4. A subsequent custodial interrogation on unrelated matters requires new *Miranda* warnings including the right to have counsel present during interrogation on the *new charges*. *Id.*

The *Stewart* court reasoned that these two procedures occurring immediately after one another, i.e., an arraignment and custodial interrogation on separate and unre-

lated charges, would not confuse even the most uneducated defendant on the right to counsel on a separate, unrelated charge. *Id.* The court noted that if a defendant had been appointed counsel at an arraignment, and then immediately advised about his right to an attorney during a subsequent and unrelated custodial interrogation, it is reasonable to assume that the defendant would indicate that he already had an appointed attorney that should be present during the interrogation. *Id.* This would then prompt the person conducting the interrogation to again advise him of the nature of new charges, ask if he wants an attorney present for *these charges*—as opposed to the arraigned charges—or if he wishes to waive his rights. Mr. Stackhouse waived his *Miranda* rights and showed no confusion when doing so.

■■ Allegations of trickery are also without merit. The record is unclear whether the detectives had knowledge that Mr. Stackhouse's attorney was trying to contact him. Regardless, at the time of the confession Mr. Stackhouse had waived his right to counsel. "[A] waiver is valid as a matter of law once it is determined that a suspect was aware of his rights and the State's intention to use his statements against him, and his decision not to invoke those rights was uncoerced." *State v. Earls*, 116 Wn.2d 364, 380, 805 P.2d 211 (1991); *Moran v. Burbine*, 475 U.S. 412, 422-23, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). The fact that an attorney, unbeknownst to the defendant, is trying to contact him during a confession has no bearing on the defendant's capacity to comprehend and knowingly relinquish his constitutional right. *Earls*, 116 Wn.2d at 380; *Burbine*, 475 U.S. at 422; *State v. Greer*, 62 Wn. App. 779, 787-88, 815 P.2d 295 (1991).

Admission of Taped Confession at Trial. Mr. Stackhouse contends the trial court abused its discretion by allowing the State to play the taped confession because it was cumulative and caused unfair prejudice.

■ We will not disturb a trial court's ruling on a motion in limine or the admissibility of evidence absent an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 118 S. Ct. 1193 (1998);

*State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). "The decision to limit trial testimony is within the broad discretion of the trial court." *State v. Smith*, 82 Wn. App. 327, 333, 917 P.2d 1108 (1996), *review denied*, 130 Wn.2d 1023 (1997).

*Taped confession not cumulative.* Evidence may be excluded if its probative value is substantially outweighed by the needless presentation of cumulative evidence. ER 403.

On February 15, 1996, Mr. Stackhouse moved to exclude his taped confession on the ground that it would be cumulative to testimony that could be obtained by the two detectives who were present during the taped confession. But neither detective had testified at the time of the motion. The court ruled the State could not admit both the taped confession and a transcript of the taped confession because that would be cumulative. It had to choose one or the other.

Mr. Stackhouse argues that the statements in the confession proved to be cumulative to the testimony given by Detective Minde Connelly and Detective James Hansen. He is mistaken.

Neither Detective Connelly nor Detective Hansen testified about the taped confession. Detective Connelly was called to the stand four times. The first three times, she testified about her experience, evidence at the crime scene, the victim, injuries to the victim, interviews with codefendant Mr. Kukrall, and evidence found in locations other than the crime scene. The fourth time she testified about the conversation and statements made by Mr. Stackhouse during the first interview at the Pend Oreille County jail. And he apparently does not complain about that.

The prosecutor did not ask Detective Connelly questions about the statements made in the taped confession. Detective Hansen made only the following references to the tape:

Q: During this tape-recorded second interview, did you [Detective Hansen] ask any questions of Mr. Stackhouse?

A: I did ask a few questions, yes.

Q: And will that be reflected in the tape?

A: Yes, it would be.

Report of Proceedings at 819.

The taped confession was not cumulative.

 *Taped confession not unfairly prejudicial.* Audiotapes are admissible at the discretion of the trial court, but should be excluded if they are unduly prejudicial. *State v. Frazier,* 99 Wn.2d 180, 188, 661 P.2d 126 (1983); *State v. Clapp,* 67 Wn. App. 263, 272, 834 P.2d 1101 (1992), *review denied,* 121 Wn.2d 1020 (1993). Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. " '[U]nfair prejudice' is that which is more likely to arouse an emotional response than a rational decision by the jury." *State v. Gould,* 58 Wn. App. 175, 183, 791 P.2d 569 (1990). Within its context, "unfair prejudice" means an undue tendency to suggest a decision on an improper basis—commonly an emotional one. *State v. Cameron,* 100 Wn.2d 520, 529, 674 P.2d 650 (1983). The addition of the word "unfair" in ER 403 "obligates the court to weigh the evidence in the context of the trial itself, bearing in mind fairness to both the State and defendant." *State v. Bernson,* 40 Wn. App. 729, 736, 700 P.2d 758, *review denied,* 104 Wn.2d 1016 (1985).

 "In almost any instance, a defendant can complain that the admission of potentially incriminating evidence is prejudicial in that it may contribute to proving beyond a reasonable doubt he committed the crime with which he is charged." *Id.* As such, the focus must be on whether it was unfairly prejudicial. Here, Mr. Stackhouse argues unfair prejudice primarily on the ground that the admission of the taped confession was duplicative to testimony given by Detective Hansen and Detective Connelly. As we have noted, it was not. Furthermore, the State was not required to have the evidence in the confession come in through the detectives just because it was less inflammatory. *State v. Crenshaw,* 98 Wn.2d 789, 807, 659 P.2d 488 (1983); *State v. Adams,* 76 Wn.2d 650, 656, 458 P.2d 558 (1969), *rev'd on*

*other grounds*, 403 U.S. 947, 91 S. Ct. 2273, 29 L. Ed. 2d 855 (1971).

The State introduced the taped confession as evidence of Mr. Stackhouse's demeanor at the time of the confession. That demeanor was relevant on the issue of whether Mr. Stackhouse freely and voluntarily gave the confession. *State v. Cushing*, 68 Wn. App. 388, 392, 394-95, 842 P.2d 1035 (voluntariness of confession determined by totality of the circumstances including demeanor of the defendant), *review denied*, 121 Wn.2d 1021 (1993). The trial judge did not abuse his discretion.

Admission of Photographs. Mr. Stackhouse contends the trial court abused its discretion by failing to suppress gruesome photographs of the victim. He argues the admission of the photographs of the victim was unnecessary and caused unfair prejudice because there were alternative means available for presenting the same information depicted in the photographs. He contends the verbal testimony by law enforcement and medical personnel about the victim's injuries would have been sufficient, and the admission of the photographs was unnecessary to establish the facts to prove the elements of the crime charged.

The admissibility of photographs is generally within the sound discretion of the trial court. *State v. Sargent*, 40 Wn. App. 340, 347, 698 P.2d 598 (1985); *Crenshaw*, 98 Wn.2d at 806. The decision to admit photographs will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Pirtle*, 127 Wn.2d 628, 651, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996); *Sargent*, 40 Wn. App. at 347. "Unless it is clear from the record that the primary reason to admit gruesome photographs is to inflame the jury's passion, appellate courts will uphold the decision of the trial court." *State v. Daniels*, 56 Wn. App. 646, 649, 784 P.2d 579, *review denied*, 114 Wn.2d 1015 (1990).

Gruesome photographs are admissible if accurate and if their probative value outweighs their prejudicial ef-

fect. *Crenshaw*, 98 Wn.2d at 806; *Sargent*, 40 Wn. App. at 347. "Prosecutors as well as trial courts must exercise their discretion in the use of gruesome photographs." *Crenshaw*, 98 Wn.2d at 807. When proof of criminal acts may be amply proven through testimony and noninflammatory evidence, prosecutors must "use restraint in their reliance on gruesome and repetitive photographs." *Id.* But a brutal crime cannot be explained as anything other than a brutal crime. *Id.*; *Adams*, 76 Wn.2d at 656.

Mr. Stackhouse contends the State is precluded from using the gruesome photographs because other testimonial evidence is available to explain the victim's injuries. The law requires an exercise of restraint, not a preclusion simply because other less inflammatory testimonial evidence is available. *Crenshaw*, 98 Wn.2d at 807.

Here, the court did not allow the State to present both a videotape and multiple still photographs of the victim at the crime scene. The court required the State to choose one or the other to avoid cumulative evidence. It allowed only one still photograph of the victim at the scene along with other crime scene photographs where the victim was not in the picture.

"Photographs have probative value when 'they are used to illustrate or explain the testimony of the pathologist performing the autopsy.'" *State v. Brett*, 126 Wn.2d 136, 160, 892 P.2d 29 (1995) (quoting *State v. Lord*, 117 Wn.2d 829, 870, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992)), *cert. denied*, 516 U.S. 1121 (1996). The court allowed the pathologist to rely on only four photographs. It had previously ruled that the pathologist could rely on charts and graphs to show the injuries not depicted in the autopsy photographs.

The pictures established the identity of the victim. They showed the manner in which she was killed. In short, they aided the jury in understanding the physical facts relevant to Mr. Stackhouse's intent. *See State v. Griffith*, 52 Wn.2d 721, 727, 328 P.2d 897 (1958). Mr. Stackhouse's concession on the cause of death does not make the

photographs irrelevant. *State v. Rice*, 110 Wn.2d 577, 598-99, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910 (1989). The trial court did not abuse its discretion.

Rebuttal Testimony about Invocation of Right to Remain Silent. Mr. Stackhouse argues the court abused its discretion in denying his motion for a mistrial because he was unfairly prejudiced by his right to remain silent being used against him. The State contends that the question posed to Detective Connelly in redirect was proper rebuttal testimony. We agree.

The State is generally not allowed to comment on a defendant's choice to remain silent. *State v. Jones*, 111 Wn.2d 239, 248-49, 759 P.2d 1183 (1988). "A comment on an accused's silence occurs when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). However, the State may do so in rebuttal if the defense raises the issue. *Jones*, 111 Wn.2d at 248-49; *United States v. Robinson*, 485 U.S. 25, 32-33, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988). Because the central purpose of a criminal trial is to decide the factual question of guilt or innocence, "it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another." *Robinson*, 485 U.S. at 33.

During the first redirect examination of Detective Connelly—and after the jury had heard the taped confession—the prosecutor asked whether Mr. Stackhouse had ever contacted her to deny the statements. Detective Connelly stated: "No. He did not." Defense counsel objected after the answer was given, and the court sustained the objection. During defense counsel's recross of the detective, the testimony went as follows:

Q: Ma'am you had later contact with Toby, in jail, did you not, when you obtained some blood from him for testing purposes?

A: Yes, I did.

Q: And on that occasion, you did not offer to have him go over his statement, change it, retract it, deny it, or anything like that?

A: That's correct.

During the second redirect, the State then asked and elicited the following testimony in rebuttal:

Q: You indicated in response to [defense counsel's] question that you did have contact with Mr. Stackhouse to get blood and hair samples, correct?

A: That's right, I did.

Q: Did Mr. Stackhouse talk to you at that time?

A: No, he did not.

Q: Did he offer to change —

[DEFENSE COUNSEL]: Object, Your Honor.

The court subsequently sustained the objection and denied Mr. Stackhouse's motion for a mistrial. We review for an abuse of discretion. *Lewis*, 130 Wn.2d at 707. Here, the trial court did not abuse its discretion in denying the motion.

The testimony was proper rebuttal. *Jones*, 111 Wn.2d at 249; *Robinson*, 485 U.S. at 33. The questioning posed by defense counsel during recross opened the door to a comment on Mr. Stackhouse's invoking his right to remain silent. After initially waiving his right, Mr. Stackhouse confessed and made incriminating statements against self-interest. After consulting counsel, Mr. Stackhouse recanted and pleaded not guilty. Defense counsel during recross brought into question the validity and reliability of the confession. He invited the jury to infer that Mr. Stackhouse was denied due process when he waived his right to remain silent. This was a defense theme throughout the case. The question suggested that the detective failed to follow up after the confession by allowing Mr. Stackhouse to recant, retract, deny, or change his confession.

During its second recross, the State then attempted to fairly address that issue. Doing so was proper rebuttal. *Jones*, 111 Wn.2d at 249; *Robinson*, 485 U.S. at 33.

Hearsay Statements in Closing Argument. Mr. Stackhouse contends the trial court improperly allowed the State to present hearsay statements during its closing arguments (and excluded during trial) by telling the jury how the victim had asked Mr. Stackhouse to please stop hitting her. He argues that such statements were not in evidence.

The admission and exclusion of evidence is within the sound discretion of the trial court and will not be reversed absent a manifest abuse of discretion. *State v. Swan*, 114 Wn.2d 613, 658, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991); *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 118 S. Ct. 1193 (1998).

During the direct examination of codefendant Mr. Kukrall, the prosecutor asked several questions about the interactions between Mr. Stackhouse and the victim on the night of the murder. Mr. Kukrall testified that Mr. Stackhouse hit the victim after which she "raised her hand, said, Stop, I will do whatever you want." The court sustained defense counsel's objection on hearsay grounds. Defense counsel did not move to strike the testimony nor did the trial court instruct the jury to disregard the testimony. When an objection is sustained with no further motion to strike the testimony and no further instruction for the jury to disregard the testimony, the testimony remains in the record for the jury's consideration. *Swan*, 114 Wn.2d at 659. Here, the State was not precluded from presenting the hearsay statements of the victim in its closing argument.

Reversed and remanded for a new trial.

SCHULTHEIS, C.J. concurs.

BROWN, J. (dissenting) — I agree with the majority opinion on all points but the critical one. I disagree there was an abuse of discretion on the part of the trial judge in denying

the challenges for cause for jurors 6 and 32. It is not relevant to the critical issue that the trial judge excluded in limine (even correctly) evidence of the defendant's prior bad acts under either ER 404(b) or ER 609(a). Our focus is on jury voir dire and juror impartiality, not evidence admissibility, or change of venue based on pretrial publicity. Today we should be deciding solely whether the trial judge manifestly abused his discretion by denying the challenges for cause and thereby denied the defendant a fair trial.

Prior knowledge of the defendant's prior conviction or involvement in a recent similar murder does not automatically disqualify a juror. *State v. Coe*, 109 Wn.2d 832, 840-41, 750 P.2d 208 (1988). The *Coe* court relied on the trial court's assessment of jurors' assurances of impartiality when rejecting the defendant's claim the jurors knew of Mr. Coe's prior recent convictions or the related convictions of his mother, Ruth. *Id.* at 841.

At worst, jurors 6 and 32 equivocated when answering on the subject of their partiality. Accordingly, this is a case of claimed actual bias, not implied conclusively presumed bias. Our standard of review for equivocal answers by prospective jurors is stated in *State v. Rupe*, 108 Wn.2d 734, 749, 743 P.2d 210 (1987), *cert. denied*, 486 U.S. 1061 (1988):

> Equivocal answers alone do not, however, require that a juror be removed when challenged for cause. The question is whether a juror with preconceived ideas can set them aside. The trial judge is best situated to determine a juror's competency to serve impartially. The trial judge is able to observe the juror's demeanor and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial.

(Citations omitted.)

The same standard was applied in *State v. Noltie*, 116 Wn.2d 831, 844, 809 P.2d 190 (1991) (relied upon by the majority), where a challenge for cause was rejected based upon a juror's equivocal answer.

Washington cases have consistently held that the denial of a

challenge for cause lies within the discretion of the trial court and will not constitute reversible error absent a manifest abuse of that discretion. Actual bias differs from implied bias in that where implied bias exists, it is conclusively presumed from the facts shown; whereas, in cases where actual bias is claimed, it must be established by proof.

*State v. Noltie*, 116 Wn.2d at 838. Removal is not required, rather the question is whether the juror with prior knowledge or preconceived ideas about a case can set them aside and render a fair and impartial verdict. *Id*. As noted in *Noltie*, this becomes a preliminary *question of fact* for the trial court involving the state of mind of the challenged juror. *Ottis v. Stevenson-Carson Sch. Dist. No. 303*, 61 Wn. App. 747, 753, 812 P.2d 133 (1991). The trial judge exercises fact-finding discretion to weigh the inferences related to the evidence and decide the credibility of the juror. *Id*. at 753-54. I would not disturb this exercise of trial court discretion. We are in no position to judge the credibility of these jurors; that is for the trial judge.

Here, the trial court denied the challenge for cause for juror 32 saying: "She said more than once that she believed she could be fair. But she also said she preferred not to sit on this case. And that isn't sufficient for disqualification." And the trial court also said in denying the challenge to juror 6: "he was—quite forthcoming. And rather talkative. I think those—both attorneys elicited a lot of information from [juror 6]. My recollection of his testimony, if you will, was that he could be fair. Balancing all of those things. And while he did have, as did [juror 32], some knowledge of the other crime, I don't believe that disqualifies him as a juror."

The majority relies on *State v. Parnell*, 77 Wn.2d 503, 463 P.2d 134 (1969). Mr. Parnell's case was reversed because a juror sat in on a preliminary hearing in the very case where he served as a juror and was in a position to acquire facts in the case outside of the jury's view. The *Parnell* court was, therefore, examining a dissimilar and far different issue than examined here and in *Coe*. Furthermore, it is my view that pretrial publicity about unrelated albeit

similar matters is generally likely to be less harmful than publicity about a case at bar.

Likewise, the majority has misplaced reliance in *State v. Pam*, 98 Wn.2d 748, 659 P.2d 454 (1983), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988), *aff'd on reh'g*, 113 Wn.2d 520, 782 P.2d 1013, 80 A.L.R.4TH 989 (1989). In *Pam* the majority examined, in part, the admissibility of the defendant's prior convictions under ER 404(b) and ER 609(a) and found no error in the rulings allowing them. Justice Utter's concurring opinion focused on his view that the *Pam* majority failed to recognize the potential for prejudice from permitting impeachment evidence of similar past crimes. However, even Justice Utter concluded the trial court did not abuse its discretion in admitting the evidence. *Pam*, 98 Wn.2d at 760 (Utter, J., concurring). It is significant for our analysis here there was no juror impartiality question raised by Mr. Pam.

I do not believe the trial judge abused his discretion when deciding the preliminary fact questions related to weighing the credibility of jurors 6 and 32. The jurors indicated they could be fair and impartial and the trial court agreed. The trial court thus properly acted when rejecting the challenges for cause using the *Coe, Rupe, Noltie*, and *Ottis* standards. I respectfully dissent to that portion of the majority opinion holding to the contrary. I would affirm in all other respects.

Review denied at 136 Wn.2d 1002 (1998).