174 P.3d 136 (2007)
In the Matter of the DETENTION OF Bryan DUNCAN, Appellant.
No. 24820-8-III.
Court of Appeals of Washington, Division 3.
December 4, 2007.
Reconsideration Denied January 11, 2008.
*138 Valerie Marushige, Attorney at Law, Kent, WA, for Appellant.
Sarah Sappington, Office of The Atty General, Joshua Choate, Office of the Washington State Attorney, Seattle, WA, for Respondents.
SWEENEY, C.J.
¶ 1 This is an appeal from a jury verdict that found Bryan Duncan to be a sexually violent predator (SVP) as defined in chapter 71.09 RCW. He assigns error to several of the court's rulings on evidence. But we conclude they were discretionary decisions and that the judge did not abuse his discretion. And we therefore affirm the judgment.

FACTS
¶ 2 Mr. Duncan was born in March 1975. He molested a 7-year-old boy in 1992 and was found guilty of first degree child molestation. Mr. Duncan was then 16 or 17 years old. He pleaded guilty in January 1993 to two additional counts of first degree child molestation. The first of these counts involved a 9-year-old girl. Mr. Duncan had sexual intercourse with her when he was 13 years old. The second count involved acts against a 10-year-old boy when Mr. Duncan was 13 years old. All of these incidents occurred in Benton County and all were defined as sexually violent offenses in former RCW 71.09.020(6) (1995). Mr. Duncan was also adjudged guilty in separate actions for two counts of communication with a minor for immoral purposes. Mr. Duncan was committed to the Department of Juvenile Rehabilitation for three consecutive 52-week sentences following these adjudications. He served his sentences at Maple Lane School, a juvenile facility in Centralia.
¶ 3 Mr. Duncan participated in a sex offender treatment program while at Maple Lane. He admitted sexual acts with more than 20 children between 1984 and 1992. One Maple Lane case manager reported that Mr. Duncan claimed between 70 and 100 victims. During a mental health assessment in 1996, Mr. Duncan admitted to sexual activity with as many as 40 children. These victims, mostly male, ranged in age from 2 to 13 years old. The sexual acts included vaginal and anal intercourse, forced sexual games, fellatio, fondling, and masturbation. Mr. Duncan also revealed in counseling that he fantasized about sex with children and that these fantasies sometimes involved the mutilation, killing, and eating of his victims. He received over 75 infraction reports for non-compliance with staff orders, acting out, and violence during his stay at Maple Lane.
¶ 4 Mr. Duncan was due to be released from Maple Lane School in late March 1996, on his 21st birthday. On March 22, 1996, the State filed a petition for commitment of Mr. Duncan as an SVP. RCW 71.09.030. He was then moved to the Special Commitment Center (SCC) pending the outcome of the petition. For a variety of reasons  mostly at the request of Mr. Duncan's counsel  the commitment trial was delayed until October 2005. The jury concluded that Mr. Duncan was a sexually violent predator.

DISCUSSION
¶ 5 Mr. Duncan assigns error to a number of the court's rulings on evidence. The trial court has wide discretion on questions of evidence. In re Det. of Bedker, 134 Wash.App. 775, 777, 146 P.3d 442 (2006). Evidentiary rulings usually are not of constitutional magnitude. So even an erroneous ruling must materially affect the outcome of the trial to warrant reversal. State v. Halstien, 122 Wash.2d 109, 127, 857 P.2d 270 (1993).
UNFAIR PREJUDICE
¶ 6 Mr. Duncan first contends the trial court abused its discretion by admitting evidence *139 that he refused to submit to a psychological examination during pretrial discovery. He contends this evidence was unfairly prejudicial.
¶ 7 Dr. Leslie Rawlings is a psychologist. He evaluated Mr. Duncan in 1996 just before the State filed its petition for commitment. He considered his 1996 evaluation and Mr. Duncan's history of sex offenses. He reviewed his records. And he undertook an actuarial risk assessment. The actuarial approach to risk assessment uses a statistical analysis to identify a limited set of risk factors that assist in the prediction of future dangerousness. In re Det. of Thorell, 149 Wash.2d 724, 753, 72 P.3d 708 (2003). Dr. Rawlings concluded that Mr. Duncan exhibited schizophrenia and severe pedophilia and had great difficulty controlling his sexual behavior. He testified that this mental abnormality made it more likely than not that Mr. Duncan would commit acts of predatory violence if not confined.
¶ 8 Dr. Rawlings admitted that his conclusion that Mr. Duncan still fantasized about children was based "on what others have written." Report of Proceedings (RP) at 1256. The State then asked whether he would have liked an opportunity to update his evaluation of Mr. Duncan. Dr. Rawlings said yes. The State then asked, "And what stopped you from doing that?" Id. at 1328.
¶ 9 Mr. Duncan moved for a mistrial. He argued that the question put Mr. Duncan in a "terrible light." Id. at 1329. Left dangling, the question suggested that he was hiding something. A respondent in a commitment proceeding cannot be compelled to submit to a mental examination during pretrial discovery under chapter 71.09 RCW. In re Det. of Marshall, 156 Wash.2d 150, 154, 125 P.3d 111 (2005).
¶ 10 The trial judge ruled that the State could ask whether Mr. Duncan had refused a mental examination because this was a civil action and Mr. Duncan therefore had no right to confrontation or to remain silent. The court also concluded that fairness entitled the State to ask whether Mr. Duncan had consented to a more recent interview because he had made the point that Dr. Rawlings' opinion was to some degree based on hearsay reports. The court denied Mr. Duncan's motion for mistrial. The State then asked Dr. Rawlings if he had asked to interview Mr. Duncan again. Dr. Rawlings answered, "Yes." RP at 1341. The State then asked, "And were you able to interview him?" Id. Dr. Rawlings answered, "No." Id. No further testimony was presented on this subject.
¶ 11 Mr. Duncan contends it was unfairly prejudicial to allow Dr. Rawlings to testify that he had not been able to interview Mr. Duncan. Testimony that is likely to provoke an emotional response rather than a rational decision is unfairly prejudicial. State v. Ortega, 134 Wash.App. 617, 624, 142 P.3d 175 (2006), review denied, 160 Wash.2d 1016, 161 P.3d 1027 (2007); State v. Stackhouse, 90 Wash.App. 344, 356, 957 P.2d 218 (1998); ER 403. Such testimony should be excluded if its potential prejudice substantially outweighs its probative value. Stackhouse, 90 Wash.App. at 356, 957 P.2d 218. The trial court must weigh the proffered evidence in context to make this decision. Id.
¶ 12 The State argues that Mr. Duncan waived this issue because he did not specifically ask the trial court to balance the probative value of the evidence against its prejudicial effect. But Mr. Duncan objected to the admission of this evidence. And the trial court considered both its relevance and its fairness. Accordingly, we conclude that the issue was properly preserved for appeal.
¶ 13 Mr. Duncan does not have a constitutional right to refuse a mental examination. He has a statutory right to do so. In re Det. of Audett, 158 Wash.2d 712, 726, 147 P.3d 982 (2006). Nor does he have a Fifth Amendment right to remain silent about the examination. Id. Jurors here asked him why he chose not to be reevaluated for this trial. The trial court answered: "Mr. Duncan did not wish to do so, and the Court did not order him to participate in further evaluation." RP at 1921. We conclude that the trial court did balance the possibility that this information was prejudicial against its relevance. Mr. Duncan asked *140 about Dr. Rawlings' reliance on hearsay information. The court then concluded that it was only fair to allow the State to ask why Dr. Rawlings had to rely on secondhand information. Those are tenable grounds for the judge's ruling.
¶ 14 This was an SVP civil commitment proceeding. A central issue then was Mr. Duncan's current mental state and his likelihood to engage in predatory acts of sexual violence if released. In re Det. of Kelley, 133 Wash.App. 289, 292, 135 P.3d 554 (2006), review denied, 159 Wash.2d 1019, 157 P.3d 404 (2007). Reliable, up-to-date information on Mr. Duncan's psychological state was highly relevant. And an explanation why the State could not provide current information was also therefore relevant. The trial court did not abuse its discretion in allowing the State to pursue this line of questioning. Stackhouse, 90 Wash.App. at 356, 957 P.2d 218.
¶ 15 Mr. Duncan next assigns error to the trial court's admission of evidence that he intended to move in with convicted child molester Clarence Walls. Mr. Duncan had a sexual relationship with Mr. Walls while both were incarcerated in the SCC. Mr. Walls was released from the SCC in 2004 after the State agreed to dismiss an SVP petition against him. Mr. Duncan's expert, Dr. Richard Wollert, is a psychologist. In Mr. Walls' SVP proceeding, Dr. Wollert had questioned the effectiveness of the actuarial tools in predicting recidivism in juvenile offenders. The court ordered Mr. Duncan not to question Dr. Wollert about Mr. Walls' case in front of the jury.
¶ 16 The State showed on cross-examination of Dr. Wollert that Mr. Duncan intended to move in with Mr. Walls. Mr. Duncan argued, outside the presence of the jury, that this opened the door to inquiry about the Walls proceeding and specifically to inquiry about why the SVP proceeding against Mr. Walls was dismissed. The court disagreed and refused to allow the inquiry of Dr. Wollert.
¶ 17 Mr. Duncan now contends the admission of Mr. Walls' criminal sexual history was unfairly prejudicial. He did not object on the basis of prejudice at trial. But that aside, we conclude that the trial court did not abuse its discretion. Mr. Duncan testified that he had an adult sexual relationship with Mr. Walls and now had appropriate masturbatory fantasies as a result. The fact that Mr. Walls had a history of sexually abusing children was relevant, given the fact that Mr. Duncan intended to live with him.
¶ 18 Moreover, Mr. Duncan had the opportunity to address that fear. In response to a juror who asked what he would do if he found out Mr. Walls was sexually molesting children in their apartment, Mr. Duncan answered that he would leave and call the police. Information that Mr. Duncan's intended roommate had a history of sexual offenses against children was not then unfairly prejudicial under the circumstances. Stackhouse, 90 Wash.App. at 356, 957 P.2d 218. And the trial judge did not, therefore, abuse his discretion by refusing further inquiry into the Walls proceeding.
LIMITATION ON CROSS-EXAMINATION RE: SUCCESS OF THE SCC PROGRAM
¶ 19 Dr. Paul Spizman is a psychologist at the SCC. He testified for the State. He related Mr. Duncan's history of treatment and infractions at the SCC. He also stated that untreated sexual offenders have great difficulty learning to control criminal sexual behavior. On cross-examination, Mr. Duncan's counsel asked Dr. Spizman if he was aware of complaints about treatment at the SCC, including a federal lawsuit filed by Mr. Duncan alleging inadequate treatment. The State objected and argued that the parties had agreed that the federal lawsuit, which was still unresolved, was irrelevant to this civil commitment proceeding. Mr. Duncan argued that the success of the treatment program was now relevant due to the emphasis placed on his refusal to seek therapy. The trial court ruled that evidence about the federal lawsuit and the success or failure of the SCC's treatment program was "not the issue before this Court, and we can't possibly do it justice in any reasonable length of time." RP at 1424.
¶ 20 Mr. Duncan now assigns error to the trial court's refusal to allow him to ask about the success of the SCC programs generally.
*141 ¶ 21 A trial court has discretion to set the scope of cross-examination. ER 611(b). And we will not reverse the trial court's ruling absent a manifest abuse of that discretion. State v. McDaniel, 83 Wash.App. 179, 184-85, 920 P.2d 1218 (1996). Cross-examination should be limited to the subject matter of the direct examination and the credibility of the witness. But inquiry into other matters may be allowed. ER 611(b).
¶ 22 Involuntary commitment of an SVP under chapter 71.09 RCW is a civil proceeding. The Sixth Amendment right to confrontation does not, then, apply. In re Det. of Brock, 126 Wash.App. 957, 963, 110 P.3d 791 (2005). But due process may guarantee certain procedures in cross-examining witnesses because of the significant deprivation of liberty at stake. Id. We consider three factors: "(1) the private interest affected; (2) the risk of erroneous deprivation of that interest through existing procedures and the value of additional procedural safeguards; and (3) the governmental interest." Id. at 964, 110 P.3d 791.
¶ 23 The private interest affected here is Mr. Duncan's freedom from involuntary commitment. This interest is substantial. Id. But so is the State's interest in limiting testimony to relevant issues. See id. (finding substantial government interest in limiting expert witnesses at SVP show cause hearing when documentary evidence is sufficient). In light of the relatively equal weight of these interests, the second factor becomes dispositive.
¶ 24 The court allowed Mr. Duncan to cross-examine Dr. Spizman. But the court refused to allow inquiry of Dr. Spizman as to the treatment program's success rate. Mr. Duncan was allowed to testify that he chose not to attend treatment at the SCC because he did not find it meaningful for him. It was within the trial court's discretion to limit a foray into the side issue of the program's general success rate for other participants. ER 611(b); State v. King, 113 Wash.App. 243, 289, 54 P.3d 1218 (2002) (scope of cross-examination is within the trial court's sound discretion).
¶ 25 The relevant question here was whether Mr. Duncan currently had a mental abnormality that made him likely to engage in predatory acts of sexual violence. Former RCW 71.09.020(1) (1995). The trial court's refusal to allow cross-examination into the general success of the SCC's treatment program did not increase the risk that Mr. Duncan would be erroneously committed. Brock, 126 Wash.App. at 964, 110 P.3d 791. The trial court did not deny Mr. Duncan's right to due process of law. Accordingly, the trial judge did not abuse his discretion by limiting the scope of questions put to Dr. Spizman on cross-examination.
EXCLUSION OF EXPERT TESTIMONY
¶ 26 Finally, Mr. Duncan contends the trial court denied him his right to due process by preventing another witness from testifying about the effectiveness of the mental health treatment at the SCC. Dr. Robert Halon is a forensic psychologist and marriage therapist. He testified that he gave Mr. Duncan a Rorschach (ink blot) test that indicated Mr. Duncan was not a schizophrenic. Dr. Halon felt that Mr. Duncan was impulsive, still fantasized about children, and could reoffend if angered. But he did not think the evidence established that Mr. Duncan had a mental abnormality such as pedophilia.
¶ 27 Mr. Duncan's lawyer asked Dr. Halon if he had reviewed the treatment program at the SCC. Dr. Halon answered that he had reviewed the protocol and the deposition of an employee at the SCC. The State objected to Dr. Halon giving an opinion on the quality of treatment at the SCC. The State argued that this testimony was not relevant. The trial court agreed. It noted that Mr. Duncan could testify that he did not pursue treatment at the SCC because it did not help him. An expert's opinion on the general success rate of treatment at the SCC, the court continued, was just too much of a side issue. Mr. Duncan contends this limitation on expert testimony prevented him from rebutting the State's evidence that he simply chose not to participate in treatment. He asserts the inadequacy of the SCC treatment program was an essential element of his defense.
¶ 28 Again, we review a trial court's decision to exclude expert testimony *142 for abuse of discretion. State v. Willis, 151 Wash.2d 255, 262, 87 P.3d 1164 (2004); ER 702. The right to present defense witnesses is a fundamental element of due process. State v. Ellis, 136 Wash.2d 498, 527, 963 P.2d 843 (1998) (Talmadge, J., dissenting). This right is not unfettered, however. Id. at 528, 963 P.2d 843. The proffered evidence must be relevant. Id. In other words, the expert testimony must be helpful to the trier of fact. Willis, 151 Wash.2d at 262, 87 P.3d 1164. Mr. Duncan urges this court to apply the procedural due process balancing factors set out in Brock, 126 Wash.App. at 964, 110 P.3d 791. But the offer of this expert testimony did not implicate the confrontation rights at issue in Brock. See State v. Stenson, 132 Wash.2d 668, 715 n. 9, 940 P.2d 1239 (1997) (the proper test for the admissibility of expert testimony is under ER 702, not the balancing test of Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (adopted in Brock, 126 Wash.App. at 964, 110 P.3d 791)).
¶ 29 Dr. Halon had testified that Mr. Duncan had a developmental disability and that treatment programs are not very effective for people with developmental disabilities. Mr. Duncan argued that Dr. Halon's opinion of the quality of treatment at the SCC was necessary to show that even if Mr. Duncan had attended the treatment program, it would not have made a difference. But again, the relevant issue in this civil commitment proceeding was whether a current mental abnormality made Mr. Duncan likely to engage in predatory acts of sexual violence if released. Former RCW 71.09.020(1); former RCW 71.09.060(1) (1995). The success rate of a program is barely relevant to that question, and in any event is a side issue. The trial court did not then abuse its discretion by refusing to allow expert testimony on the success rate of the SCC treatment program.
CUMULATIVE ERROR
¶ 30 Mr. Duncan contends that even though the claimed evidentiary errors standing alone may not justify reversal, cumulatively they denied him a fair trial. We will reverse for cumulative error when several errors that are not sufficient standing alone may be prejudicial in their cumulative effect. State v. Korum, 157 Wash.2d 614, 652, 141 P.3d 13 (2006); State v. Greiff, 141 Wash.2d 910, 929, 10 P.3d 390 (2000). We have concluded that the trial court did not err in its evidentiary rulings. There was then no cumulative error. Korum, 157 Wash.2d at 652, 141 P.3d 13.
¶ 31 We affirm the order declaring Mr. Duncan a sexually violent predator.
WE CONCUR: SCHULTHEIS and STEPHENS, JJ.