**FILED**
**DECEMBER 21, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33958-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRANCISCO J. RESENDEZ MIRANDA, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Francisco Miranda appeals his convictions for three counts of aggravated first degree murder. We affirm.

## FACTS

The facts of this case are lengthy and well known to the parties. We discuss only those portions necessary to resolve the parties' contentions.

In the early hours of an August 2014 morning, three dead bodies were located in a remote area of a Benton County farm. The victims were identified as David Perez Saucedo Jr., Abigail Renteria Torres, and Victoria Torres. Forensic examiners opined that Mr. Saucedo and Abigail Torres had been shot at close range and died quickly. Mr. Saucedo had two gunshot wounds to his head. Abigail Torres had a single gunshot wound to her head and was discovered to have been pregnant with a full-term child. The condition of Victoria Torres's body was different. It appeared to examiners that Victoria Torres had been shot while trying to run away. Victoria Torres also had marks on her neck consistent with strangulation and a physical struggle.

Law enforcement's investigation came to focus on Francisco Miranda, his father, and his two brothers. Only Mr. Miranda was ultimately arrested. Mr. Miranda's family members all left for Mexico prior to coming to the attention of the authorities.

Mr. Miranda made a number of statements that were used against him at trial. While Mr. Miranda's statements to law enforcement were merely inconsistent, as opposed to directly incriminating, the same was not true of his statements to lay witnesses. Several witnesses testified that Mr. Miranda had admitted to being involved with the shootings along with his family members. One of the lay witnesses (a jail inmate)

2

reported Mr. Miranda stating that one of the female victims had not died right away, so his family members took a belt and stepped on her throat.

Apart from recounting Mr. Miranda's various confessions, several witnesses placed Mr. Miranda together with the victims the night before the murders. One of the witnesses also said Mr. Miranda had borrowed his loaded .38-caliber revolver the night of the murders. When the firearm was later returned, the ammunition was gone and blood spatter was located around the barrel.[1]

The State's theory was that Mr. Miranda sought revenge against Mr. Saucedo for burglarizing his apartment. Mr. Miranda and his family members abducted Mr. Saucedo and his two female companions, took them out to a remote farm, and then shot them execution style. Consistent with Mr. Miranda's confession, the State theorized that Mr. Miranda's family members had strangled Victoria Torres after she escaped from the initial shooting.

The forensic evidence implicating Mr. Miranda was limited. The suspect firearm had been thrown in a river. Shoe prints and trace evidence from the scene did not connect back to Mr. Miranda. However, law enforcement were able to uncover a relevant item of

---

[1] The witness threw the firearm into a river before it could be analyzed by law enforcement.

clothing during a search of Mr. Miranda's apartment. The article was a tank top marked with a blood stain that was traced to Victoria Torres.

Mr. Miranda was charged with three counts of first degree murder with aggravating factors for there being more than one victim as to all three counts, RCW 10.95.020(10), and an additional aggravating factor based on the fact that one of the victims was pregnant at the time of her death, RCW 9.94A.535(3)(c).

At trial, the State introduced through its medical examiner an autopsy photograph depicting the fetus taken from Abigail Torres's womb. The medical examiner explained he had selected the photograph as a jury exhibit because it was helpful in explaining that the baby was full term and that the victim's pregnancy would not have appeared subtle to the outside observer. The trial court admitted the autopsy photo over Mr. Miranda's objection, reasoning its probative value outweighed any prejudice.

At the conclusion of trial, Mr. Miranda objected to the court's inclusion of an accomplice liability instruction. Relevant to this appeal, Mr. Miranda argued there was insufficient evidence to prove he was a major participant in the killings and, therefore, it was unfair to allow the State to prove he acted as an accomplice to uncharged individuals. The trial court disagreed with Mr. Miranda's arguments and permitted the instruction.

4

In addition to his objection to the State's instructions, Mr. Miranda also requested lesser included instructions on second degree murder. The court determined this instruction was factually unwarranted. The judge explained that, without resorting to speculation, he was "unable to postulate or to put together any line of reasoning that's supported by the evidence that would justify instructions on the lesser included," 14 Verbatim Report of Proceedings (Nov. 19, 2015) at 2147, and there were no "facts that would support anything other than premeditated and first degree murder with respect to all three victims," *Id.* at 2149.

The jury found Mr. Miranda guilty of all three charges. It further found the common scheme aggravator applied to all three counts. However, the jury did not find Mr. Miranda knew Abigail Torres was pregnant at the time she was killed. Thus, an aggravator was not imposed under RCW 9.94A.535(3)(c). Mr. Miranda was sentenced to life in prison without the possibility of parole. He appeals.

## ANALYSIS

*Autopsy photo*

A trial court's admission of autopsy photographs is reviewed for abuse of discretion. *State v. Yates*, 161 Wn.2d 714, 768, 168 P.3d 359 (2007). Such photos, even

if gruesome, are admissible when the probative value outweighs the prejudicial effect. *Id.*; ER 403.

Autopsy photos can be relevant to help the jury understand a medical examiner's testimony. *State v. Whitaker*, 133 Wn. App. 199, 229, 135 P.3d 923 (2006); *State v. Gentry*, 125 Wn.2d 570, 608, 888 P.2d 1005 (1995). Such photos may also help show the extent of a victim's injuries, or tend to establish elements of the offense such as intent, premeditation, or knowledge. *Yates*, 161 Wn.2d at 768-69; *State v. Crenshaw*, 98 Wn.2d 789, 806-07, 659 P.2d 488 (1983).

While autopsy photos are often relevant, they can also be prejudicial and unnecessarily cumulative. Trial courts should be wary of admitting autopsy photographs that are cumulative of other evidence. *See Crenshaw*, 98 Wn.2d at 807. But while the law requires restraint, it does not demand "preclusion simply because other less inflammatory testimonial evidence is available." *State v. Stackhouse*, 90 Wn. App. 344, 358, 957 P.2d 218 (1998).

Here, the trial court appropriately weighed the probative value of the autopsy photo against its potential for prejudice. The judge stated he admitted the photo because it would aid the jury's understanding of the medical examiner's testimony and help the State show a reasonable person would have known the victim was pregnant at the time of

her death. There is no indication the State sought to use the autopsy photograph for emotive purposes. Given these circumstances, the trial court had a reasonable basis for admitting the photo. *See Whitaker*, 133 Wn. App at 227 ("Unless it is clear from the record that the primary reason to admit gruesome photographs is to inflame the jury's passion, appellate courts will uphold the decision of the trial court.").

While the autopsy photo was somewhat cumulative of other evidence, Mr. Miranda cannot establish any prejudice from its admission. If the jury had been improperly inflamed by the photo, one would expect the prejudice would have manifested itself through an adverse finding on the pregnancy aggravator, RCW 9.94A.535(3)(c). But the jury did not make this finding. When asked if the State had proved Mr. Miranda knew Abigail Torres was pregnant, the jury answered, "No." Clerk's Papers (CP) at 76. Given the jury's disposition, it is apparent the photograph had no improper impact on the verdict.

*Accomplice liability jury instruction*

The theory of accomplice liability set forth at RCW 9A.08.020 permits the State to hold individuals accountable for the conduct of others. A person may be found guilty as an accomplice when, "[w]ith knowledge that it will promote or facilitate the commission of the crime," the person "[s]olicits, commands, encourages, or requests such other person

7

No. 33958-1-III
*State v. Miranda*

to commit it," or "[a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a)(i)-(ii). Essentially, the State "must prove the substantive crime was committed and the accused acted with knowledge that he or she was aiding in the commission of the offense." *State v. Lazcano*, 188 Wn. App. 338, 363, 354 P.3d 233 (2015).

Mr. Miranda argues the court should not have provided the jury with an accomplice liability instruction because it lacked evidentiary support. We apply a sufficiency analysis to this argument. *State v. Munden*, 81 Wn. App. 192, 195, 913 P.2d 421 (1996).

The State presented sufficient evidence to justify an accomplice liability instruction. According to the trial testimony, Mr. Miranda and his brothers confronted Mr. Saucedo about burglarizing Mr. Miranda's apartment. Mr. Miranda and his family members then abducted Mr. Saucedo and his female companions and took them out to the farm. While it is unclear exactly who did what at the murder scene, the State's evidence shows Mr. Miranda played a significant role. Mr. Miranda procured a firearm before going out to the farm and he confessed to firing shots at the victims. Although Mr. Miranda's family members may have also facilitated the victims' deaths, the State's evidence showed Mr. Miranda was closely involved. The totality of the evidence

8

provided a strong basis for the jury to find Mr. Miranda liable as either a principal or an accomplice to all three murders.

*Lesser included jury instruction*

At trial and on appeal, Mr. Miranda has argued that the trial court should have instructed the jury on the lesser included offense of second degree murder. While second degree (intentional) murder legally qualifies as a lesser included offense to aggravated first degree (premediated) murder, the trial court denied Mr. Miranda's request because it was factually inapplicable. We review the trial court's assessment for abuse of discretion. *State v. Condon*, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015).

A lesser included instruction is only factually appropriate when the affirmative evidence at trial supports an inference that the lesser crime was committed. In assessing the factual basis for a lesser included instruction, courts view the evidence in the light most favorable to the requesting party. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). A lesser included instruction is appropriate if the trial evidence affirmatively tends to show the lesser included offense was committed to the exclusion of the greater offense. *Id.* at 455. A lesser included instruction is not warranted simply because the jury might disbelieve the State's evidence. *Id.* at 456.

9

To qualify for an instruction on the lesser included offense of second degree murder, Mr. Miranda was obliged to point to facts suggesting the victims were murdered in a manner that did not involve premeditation. *See* RCW 9A.32.050(1)(a). As recognized by the trial court, no affirmative facts support this scenario.

To the extent one believes (as the jury did) that Mr. Miranda was responsible for killing the three victims, the evidence supported only premeditation. Even if one could interpret the evidence to suggest Mr. Miranda originally abducted the victims with the intent to scare them, not kill them, the evidence from the murder scene shows that once everyone was out at the farm, the murders were committed with deliberate intent. Unlike *Condon*, there is no evidence of a startling event or provocation that might have led Mr. Miranda and his companions to kill the victims. To the contrary, the forensic evidence indicates the murders were dispassionate and methodical. Two of the victims were shot at close range without any signs of resistance. Although the injuries to the third victim suggest she did not immediately die after being shot, the victim's struggle appeared purely defensive. There is no indication the victim engaged in some sort of affirmative or surprising conduct that could have prompted Mr. Miranda and his family members to fire shots. While one could speculate as to some sort of scenario whereby the victims provoked an attack, there is no affirmative evidence supporting such a hypothesis.

10

No. 33958-1-III
*State v. Miranda*

Speculation is not sufficient to justify a lesser included instruction.

Because the affirmative evidence was only suggestive of one crime—premediated

first degree murder—the court's instructional decision was appropriate.

CONCLUSION

The judgment and sentence of the trial court is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Fearing, C.J.                            Siddoway, J.

11